UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CROSBY LEGACY COMPANY, LLC, | ) | |
| d/b/a PHILIP CROSBY | ) | |
| ASSOCIATES, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | C.A. No. 18-10814-MLW |
| | ) | |
| TECHNIPFMC PLC | ) | |
|     Defendant. | ) | |

MEMORANDUM AND ORDER

WOLF, D.J.                                    September 29, 2021

I.    INTRODUCTION

Plaintiff Crosby Legacy Company, LLC, d/b/a Philip Crosby Associates ("PCA") brought this suit against defendant TechnipFMC plc. In essence, PCA alleges that following a merger of two companies, the new entity, TechnipFMC, failed to honor a license agreement its predecessor had made with PCA, and that TechnipFMC made misrepresentations in negotiating with PCA pursuant to the change-of-control provision in the prior agreement. PCA alleges it is entitled to damages and equitable relief arising out of PCA's breach of contract, intentional misrepresentation, violation of Mass. Gen. Laws ch. 93A, trademark and copyright infringement, and unjust enrichment. TechnipFMC moved to dismiss all counts for failure to state a claim.

The court referred this case to the Magistrate Judge for all pretrial purposes. In a Report and Recommendation (the "Report"), the Magistrate Judge recommends that the court allow in part and deny in part defendant's motion. In particular, she recommends that the court grant the motion to dismiss the counts of PCA's complaint that allege violation of the Lanham Act (counts VI and VII), copyright infringement (count VIII), and unjust enrichment through use of PCA's copyrighted materials (part of count IX). She recommends that the court deny the motion to dismiss the remaining counts, including plaintiff's claim of fraud and intentional misrepresentation (count IV). Plaintiff PCA objects to the recommendation that the court dismiss counts VI and VII. See Dkt. No. 33. Defendant TechnipFMC objects to the recommendation that the court deny dismissal of count IV. See Dkt. No. 32. In all other respects, the parties do not object to the Report.

The court has reviewed de novo those parts of the Report and Recommendation to which the parties object. The court is denying PCA's objection, and dismissing the Lanham Act claims in counts VI and VII, because it finds that PCA has not alleged a use "in commerce" of its or a similar trademark. However, the court is modifying the Report to the extent that it states that, to state a Lanham Act claim, plaintiff must allege "continuous and deliberate" use in commerce. In addition, the court is denying TechnipFMC's objection, and leaving intact the claim about fraud

and intentional misrepresentation. It finds that PCA has plausibly alleged with sufficient particularity that the parties agreed to the essential terms of a new license agreement, and that it could, therefore, be found reasonable for plaintiff to have relied on defendant's alleged misrepresentations that it would sign that agreement.

In general, the court finds that the Report and Recommendation is thorough, thoughtful, and persuasive. Accordingly, with the one modification described earlier, the court is adopting the Report and Recommendation. In summary, the court is allowing defendant's Motion to Dismiss with respect to counts VI, VII, VIII, and part of count IX, and denying defendant's Motion to Dismiss with respect to the remaining counts.

II.  LEGAL STANDARDS

A. Review of Magistrate's Report and Recommendation

Federal Rule of Civil Procedure 72(b)(3) requires the court to review "de novo any part of the magistrate judge's disposition that has been properly objected to." "Conclusory objections that do not direct the reviewing court to the issues in controversy" do not trigger Rule 72(b). Velez-Padro v. Thermo King De P.R., Inc., 465 F.3d 31, 32 (1st Cir. 2006). "Parties must take before the magistrate, 'not only their "best shot" but all of their shots.'" Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir.

1987) (quoting Singh v. Superintending Sch. Comm. of City of Portland, 593 F. Supp. 1315, 1318 (D. Me. 1984)). Therefore, a party is "not entitled to a de novo review of an argument never raised" before the magistrate judge. Borden, 836 F.2d at 6.

Where no objections have been filed to a report and recommendation, the court is not required to engage in de novo review, or even in "some lesser standard" of review. Thomas v. Arn, 474 U.S. 140, 149 (1985); see also 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). However, the court is encouraged "to afford some level of review to dispositive legal issues raised by the report." Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987).

### B. Motion to Dismiss

To survive a motion to dismiss, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This pleading standard does not require "detailed factual allegations," but does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content

4

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557).

In considering a motion to dismiss under Rule 12(b)(6), the court must "take all factual allegations as true and . . . draw all reasonable inferences in favor of the plaintiff." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007). However, the court must disregard "bald assertions, unsupportable conclusions, and opprobrious epithets." In re Citigroup, Inc., 535 F.3d 45, 52 (1st Cir. 2008); Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 595 (1st Cir. 2011). The court "neither weighs the evidence nor rules on the merits because the issue is not whether plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims." Day v. Fallon Cmty. Health Plan, Inc., 917 F. Supp. 72, 75 (D. Mass. 1996).

In addition, Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This standard requires a complaint to specify the "time, place, and content of an alleged false representation," including misrepresentations forming the basis of a Chapter 93A claim. Mulder v. Kohl's Dep't Stores, Inc., 865 F.3d

5

17, 22 (1st Cir. 2017). The "specificity requirement extends only to the particulars of the allegedly misleading statement itself," not to the circumstances of the plaintiff's conduct in reliance on it. Rodi v. S. New England Sch. of Law, 389 F.3d 5, 15 (1st Cir. 2004); see also United States ex rel. Gagne v. City of Worcester, 565 F.3d 40, 45 (1st Cir. 2009) (the complaint "must specify the time, place, and content of an alleged false representation" (quotations omitted)).

Further, on a Rule 12(b)(6) motion, "the district court may properly consider only facts and documents that are part of or incorporated into the complaint." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009). However, in certain circumstances the court may consider other documents as well. There are "narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff['s] claim; or for documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993); see also Schatz v. Republican St. Leadership Comm., 669 F.3d 50, 55-56 & n.3 (1st Cir. 2012) (court may consider "(a) implications from documents attached to or fairly incorporated into the complaint, (b) facts susceptible to judicial notice, and (c) concessions in plaintiff's response to the motion to dismiss" (quotations omitted)). As explained by the First Circuit, "[when] a complaint's factual allegations are

6

expressly linked to -- and admittedly dependent upon -- a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6). Beddall v. St. Street Bank & Tr. Co., 137 F.3d 12, 17 (1st Cir. 1998). When an extrinsic document with unchallenged authenticity contradicts the complaint, the document "trumps the allegations." Clorox Co. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000) (quotations omitted).

III. COMPLAINT

The court adopts the relevant allegations recited in the Report and Recommendation. See Report at 2-10 (Dkt. No. 29).

In summary, plaintiff PCA provides consulting services regarding quality control.  FMC, a predecessor to defendant TechnipFMC, provided equipment and services to clients in the oil and gas industries.  In 2008, PCA and FMC executed a License Agreement that permitted FMC to use materials and certain trademarks in communications with employees, customers, and suppliers.  In 2009, PCA and FMC executed a second License Agreement. Then, in 2014, they executed another License Agreement that provided FMC with an "enterprise-wide, non-exclusive, non-transferable, perpetual right and license to use" specified materials.  The 2014 agreement contained a change-of-control

provision that permitted termination of the agreement by PCA in the event that FMC experienced a change of control such as a merger or acquisition.

In 2016, FMC merged with Technip S.A. to form defendant TechnipFMC plc. PCA invoked its right to terminate and require renegotiation of a license agreement. PCA alleges that the parties reached agreement as to the essential terms of a new license agreement and that a representative of TechnipFMC stated in several emails that it would execute the agreement once the technical details had been worked out. Later, TechnipFMC stated that it would not execute such an agreement. PCA alleges that TechnipFMC used the negotiating process as an excuse to continue using PCA's intellectual property without paying for it, and that it continues to wrongfully use that property now.

IV.  PROCEDURAL HISTORY

On April 26, 2018, plaintiff filed the complaint. See Dkt. No. 1. On July 2, 2018, following an extension of time to answer, defendant moved to dismiss the complaint for failure to state a claim. See Dkt. No. 8. The court referred this case to the Magistrate Judge for all pretrial purposes. See Dkt. No. 20.

Following a hearing, the Magistrate Judge issued the Report and Recommendation. See Dkt. No. 29. As indicated earlier, she recommends allowing in part and denying in part the Motion to

Dismiss. Id. Plaintiff and defendant timely filed objections to the Report and Recommendation. See Dkt. Nos. 32, 33. In addition, each responded to the other's objections. See Dkt. Nos. 34, 35.

V.   DISCUSSION

### A. Defendant's Objection to Report

Defendant TechnipFMC objects to the Magistrate's recommendation that the court deny its motion to dismiss count IV (fraud/intentional misrepresentation). The court is denying this objection.

In count IV, PCA alleges that during the parties' negotiations on the 2017 license agreement, TechnipFMC's representative repeatedly represented and promised that TechnipFMC would execute a written contract to memorialize the terms of the agreement. However, PCA alleges, TechnipFMC did not intend to execute a written contract to memorialize those terms, nor did it intend to pay the agreed-upon licensing fee. PCA alleges that TechnipFMC made these misrepresentations in order to continue to use PCA's materials without payment under guise of negotiations, and that PCA reasonably relied on those misrepresentations. See Compl. (Dkt. No. 1) ¶¶100-107.

The Magistrate Judge recommends that the court deny the motion to dismiss count IV because she found that PCA had met the heightened pleading standard applicable to fraud claims pursuant

to Rule 9(b) by alleging the content, time, and place of the allegedly false representations, and by alleging reliance, benefit, and falsity of the representations. See Report at 23-24 (quoting Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 132 (1st Cir. 2006)). The court reviews the objection de novo.

*Legal Standard.*

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "This heightened pleading standard is satisfied by an averment 'of the who, what, where, and when of the allegedly false or fraudulent representation.'" Rodi, 389 F.3d at 15 (quoting Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004)). However, "the specificity requirement extends only to the particulars of the allegedly misleading statement itself." Id. (citing Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 66 (1st Cir. 2004)). "The other elements of fraud, such as intent and knowledge, may be averred in general terms." Id.

"Under Massachusetts law, a claim for misrepresentation entails a false statement of material fact made to induce the plaintiff to act and reasonably relied upon by him to his detriment." Id. at 13; see Platten, 437 F.3d at 132 (noting that

both misrepresentation and fraud claims "require plaintiffs' reliance on defendants' representations" of material fact).

"'[T]he ordinary rule [is] that false statements of opinion, of conditions to exist in the future, or of matters promissory in nature' are not actionable in a claim for misrepresentation." Rodowicz v. Mass. Mut. Life Ins. Co., 192 F.3d 162, 175 (1st Cir. 1999) (quoting Yerid v. Mason, 341 Mass. 527, 530, 170 N.E.2d 718 (1960)). Instead, "[t]he statements allegedly relied upon by plaintiffs must be ones of fact, not of 'expectation, estimate, opinion, or judgment.'" Id. (quoting Zimmerman v. Kent, 31 Mass. App. Ct. 72, 77, 575 N.E.2d 70 (1991)). "'A representation is one of opinion if it expresses only . . . the belief of the maker, without certainty, as to the existence of the fact.'" Id. (quoting Restatement (Second) of Torts §538A (1977)) (emphasis in original). Reliance is not reasonable where the defendant has made "no more than an offer to negotiate" because this is, essentially, a belief. Saxon Theatre Corp. of Bos. v. Sage, 347 Mass. 662, 667, 200 N.E.2d 241 (1964). "To infer that deceit is at work any time contractual negotiations sour is untenable." Mass Cash Register, Inc. v. Comtrex Sys. Corp., 901 F. Supp. 404, 425 (D. Mass. 1995) (Saris, J.). "'Normally the fact that parties contemplate the execution of a final written agreement justifies a strong inference that the parties do not intend to be bound by earlier negotiations or agreements until the final terms are settled.'" Saxon Theatre,

11

347 Mass. at 667 (quoting Rosenfield v. U.S. Tr. Co., 290 Mass. 210, 216 (1935)). Thus, a "plaintiff could not reasonably rely on a representation of an intention to draw up and execute a mutually acceptable [contract] when essential terms of it had not yet been stated or settled." Id.

However, there are exceptions to this rule. "Statements of opinion may be actionable where the defendant misrepresents his actual present intent to perform a future act." Rodowicz, 192 F.3d at 176 n.10 (citing Barrett Assocs., Inc. v. Aronson, 346 Mass. 150, 190 N.E.2d 867 (1963)). "They may also be actionable where the parties have unequal knowledge of the subject matter in question and the future event is fully within the declarant's control." Id. This can apply to a representation that a party will sign a contract in the future. See Chedd-Angier Prod. Co., Inc. v. Omni Pubs. Int'l, Ltd., 756 F.2d 930, 939 (1st Cir. 1985) (citing Cellucci v. Sun Oil Co., 2 Mass. App. 722, 320 N.E.2d 919 (1974), aff'd, 368 Mass. 811, 331 N.E.2d 813 (1975)).[1] However, the First

---

[1] In essence, the relevant law remains as this court described it in 1990:

[s]tatements of opinion or judgment relating to future events are generally not actionable. However, several exceptions exist to this rule. First, such statements may be actionable where the defendant misrepresents his actual present intent to perform a future act. Barrett Associates, Inc. v. Aronson, 346 Mass. 150, 152, 190 N.E.2d 867 (1963). Second, such statements may be actionable where the parties have unequal knowledge of the subject matter in question and where the future event is fully within the declarant's control. This is

Circuit found such a representation was not actionable at the point when the parties were still engaged in negotiation "on a number of issues which were unresolved . . . ." Id.

*Analysis.*

The court is denying the motion to dismiss count IV. TechnipFMC argues, primarily, that PCA could not reasonably rely on defendant's representations that it would soon sign the 2017 license agreement. However, TechnipFMC bases its argument on Mass Cash Register, 901 F. Supp. 404, in which the court was considering the parties' arguments on summary judgment and in which the plaintiff sought to enforce an agreement of which material terms had not yet been settled. Here, by contrast, the parties agree that there was a 2014 License Agreement in place between PCA and one of defendant's predecessors, and plaintiff alleges that TechnipFMC represented that it would sign the 2017 license agreement, at least in part, to prevent PCA's exercising its rights under the 2014 agreement. See Compl. ¶105. In addition, PCA alleges, based on the 2017 emails, that the material terms of the agreement had already been agreed upon. See Compl. ¶¶57-58, 102-

---

the case, for example, where a corporate representative promises that his principal will sign a contract with the plaintiff and the principal fails to do so, Cellucci v. Sun Oil Co., 2 Mass.App.Ct. 722, 730, 320 N.E.2d 919 (1974) . . .

Logan Equip. Corp. v. Simon Aerials, Inc., 736 F. Supp. 1188, 1200 (D. Mass. 1990).

13

104. As a result, plaintiff has at least plausibly alleged that this case is unlike those cases in which the parties are still at such an early stage of the negotiations that it would be unreasonable to rely on the counterpart's representations. See, e.g., Saxon Theatre, 347 Mass. at 667 (plaintiff could not rely on representation of intent to sign agreement "when essential terms of it had not yet been stated or settled").

Therefore, the court is denying this objection and adopting the Magistrate's recommendation that it deny the motion to dismiss count IV.

### B. Plaintiff's Objections to Report

Plaintiff PCA objects to the Magistrate's recommendation that the court grant the motion to dismiss counts VI and VII, the Lanham Act claims). As indicated earlier, the court is denying this objection, but making one modification to the Magistrate's discussion of what constitutes "use in commerce," an element of trademark infringement. See 15 U.S.C. §§1114, 1125(a).[2]

---

[2]    As the Magistrate noted in the Report, see Dkt. No. 29 at 27 n.10, Section 1114 is commonly known by its public law designation, "Section 32," whereas Section 1125(a) is commonly known by its public law designation, "Section 43(a)." Section 32 prohibits the unauthorized reproduction or use in commerce of registered trademarks. See 15 U.S.C. §1114. Section 43(a) proscribes the use in commerce of words or symbols that misidentify the source or affiliation of a product or service. See 15 U.S.C. §1125(a). Although Section 43(a) "prohibits a broader range of practices than does" Section 32, Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 858 (1982), the pertinent provisions of each require a plaintiff to demonstrate a likelihood of consumer confusion. See

14

In counts VI and VII, PCA alleges that TechnipFMC violated the trademark protections of the Lanham Act by using several PCA marks ("Absolutes of Quality Management™," "Absolutes of Quality™," and the "Price of Nonconformance™"), both in its internal business operations and in its interactions and dealings with third parties.

The Magistrate recommends that the court grant the motion to dismiss as to counts VI and VII because PCA failed to adequately allege that TechnipFMC used PCA's marks "in commerce." She reasoned that trademark caselaw requires continuous and deliberate external use, and PCA's allegations that TechnipFMC used the marks in internal documents and "in dealings with third parties" do not satisfy that requirement. In addition, the Magistrate concluded that PCA had not alleged a likelihood of confusion. See Report at 27-30.

*Legal Standard.*

Plaintiff alleges that defendant infringed on its trademark under two provisions of the Lanham Act, 15 U.S.C. §§1114 and 1125(a).[3] "Trademark law seeks to prevent one seller from using

---

Venture Tape Corp. v. McGills Glass Warehouse, 540 F.3d 56, 61 n.6 (1st Cir. 2008) (citing Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 780 (1992)).

[3] 15 U.S.C. §1114 prohibits, in relevant part, the unauthorized "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of

the same 'mark' as -- or one similar to -- that used by another in such a way that he confuses the public about who really produced the goods (or service)." DeCosta v. Viacom Int'l, Inc., 981 F.2d 602, 605 (1st Cir. 1992). "To win a trademark case, a plaintiff must show 1) that he uses, and thereby 'owns,' a mark, 2) that the defendant is using that same or a similar mark, and 3) that the defendant's use is likely to confuse the public, thereby harming the plaintiff." Id.; see also Venture Tape Corp. v. McGills Glass Warehouse, 540 F.3d 56, 61 n.6 (1st Cir. 2008) (holding that claims under both 15 U.S.C. §§1114 and 1125(a) require plaintiff to allege use in commerce of a trademark or marks that misidentify the affiliation or source of a service, and likelihood of consumer confusion).

The parties do not dispute that PCA owns the marks "Absolutes of Quality Management™," "Absolutes of Quality™," and the "Price

---

any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . ."

15 U.S.C. §1125(a)(1)(A) makes liable "[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which -- is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . ."

16

of Nonconformance™." Therefore, only the second and third elements are at issue.

It is not just any use of a trademark that will subject a defendant to liability. Instead, both sections of the statute, which rely on the Commerce Clause as their constitutional basis, prohibit infringement only if a trademark is "use[d] in commerce" "in connection with" "goods or services." 15 U.S.C. §1114(1)(a); id. §1125(a). "The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade." Id. §1127.  This can occur when the trademark is used on goods for sale, or "in the sale or advertising of services." Id.

However, contrary to what the Magistrate suggested in the Report, plaintiff is not required to allege that defendant engaged in "continuous and deliberate external use" of the infringing mark. See Report at 29.  This language derives from a standard applicable in a different context.  Trademark owners seeking to establish their exclusive rights to a trademark must demonstrate their continuous and deliberate use of the mark. See, e.g., La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc., 495 F.2d 1265, 1271-72 (2d Cir. 1974); Kusek v. Family Circle, Inc., 894 F. Supp. 522, 533 (D. Mass. 1995). Infringers, however, need not use a trademark continuously and deliberately in order for their use to constitute infringement.

*Analysis.*

PCA's claim for trademark infringement fails under both sections of the Lanham Act because PCA has not alleged that TechnipFMC used its trademarks in commerce.

PCA alleges that TechnipFMC used its licensed trademarks without permission, but it does not allege that it did so in connection with the sale or advertising of goods or services. The essence of PCA's claim is that TechnipFMC continued to use PCA's licensed materials, including the trademarks, in the manner that FMC had been permitted to use those materials pursuant to the 2014 License Agreement. That agreement provides that use of the marks would be "solely for internal business purposes" "in connection with [FMC's] promotion and implementation of PCA's quality management techniques."[4] 2014 License Agreement (Dkt. No. 1-1) §2(a). Accordingly, the thrust of PCA's allegations is that TechnipFMC continued to use PCA's licensed materials without its permission, but that this use was internal and for the purpose of quality management, rather than "in commerce." This is consistent with the majority of PCA's allegations, which focus on use of the licensed materials for internal, quality-management purposes. See

---

[4] This provision also allowed FMC to use the marks in connection with its "authorized use of the Licensed PCA Materials and Modified Works," but this authorized use is similarly limited to "internal business purposes only in connection with Client's promotion and implementation of the PCA quality management techniques." 2014 License Agreement §1(b).

Compl. ¶¶25-35 (describing creation and launch of "internal communications program" based on PCA's materials, which involved "embed[ding]" PCA materials "throughout the company" and making them "available to all FMC employees"); ¶44 (PCA's materials were "integrate[d] . . . into the business processes" of TechnipFCA following merger); 68-70, 91 (PCA's materials were used in TechnipFMC's quality management processes and business operations); ¶112 (TechnipFMC shared materials with "legacy employees of FMC and the employees of the former Technip, S.A.").

The Complaint does allege that PCA's materials, including its trademarks, were sometimes shared with third parties. However, none of these allegations support an inference that they were used in commerce, for the reasons discussed in the Report at 29.

The Complaint states that the 2014 License Agreement allowed FMC to "disclose limited portions of the licensed materials and modified works to its suppliers and customers where necessary for those third parties to do business with FMC." Id. ¶¶29. See also id. ¶121 (2014 License Agreement allowed FMC "to use the PCA Marks with third parties, such as FMC's customers and vendors"). However, as discussed earlier, that agreement expressly limited use of PCA's trademarks to internal quality-control purposes. See 2014 License Agreement (Dkt. No. 1-1) §2(a). Therefore, these provisions of the agreement do not support an inference that TechnipFMC used PCA's trademarks in commerce following the merger.

Finally, the Complaint alleges that "[o]n information and belief, Defendant, subsequent to the Merger, has wrongfully used the PCA Marks both in its internal business operations and in its interactions and dealings with third parties." Id. ¶¶124, 131. As the Magistrate pointed out, this allegation is "not sufficiently specific" to support an inference that TechnipFMC used PCA's trademarks in commerce by using them in connection with the sale or advertising of services. Report at 29. See also Menard v. CSX Transp., Inc., 698 F.3d 40, 44 (1st Cir. 2012) (finding speculative allegation made "on information and belief" insufficient to state a claim, and explaining that "if [plaintiff] had any facts to support [the allegation], they should have been set forth").

Therefore, PCA has failed to allege that TechnipFMC used PCA's trademarks, or any similar marks, in commerce. As a result, the court need not reach the questions of whether the marks in question are the same or similar to PCA's marks, or whether use of those marks would create a likelihood of confusion.

Accordingly, the court is modifying the Report to the extent it states that plaintiff must allege continuous and deliberate use of a mark to state a claim for trademark infringement, but otherwise adopting her recommendation that the court grant the motion to dismiss counts VI and VII.

C. <u>Remainder of Report</u>

In other respects, as indicated earlier, the court finds that the Report and Recommendation is thorough, thoughtful, and persuasive. Therefore, with the one modification described earlier, the court is adopting the Report and Recommendation and incorporating it in this Memorandum.

VI. ORDER

In view of the foregoing, it is hereby ORDERED that:

1.    The attached Magistrate Judge's Report and Recommendation (Dkt. No. 29) is ADOPTED in part and MODIFIED in part as described in this Memorandum and Order, pursuant to 28 U.S.C. § 636(b)(1)(C), and incorporated in this Memorandum. Therefore, Defendant's Motion to Dismiss (Dkt. No. 8) is ALLOWED with respect to counts VI, VII, VIII, and the portion of count IX that pertains to PCA's licensed materials that are subject to copyright protections. It is DENIED with respect to the remaining counts.

2.    This case is RETURNED to the Magistrate Judge for future pretrial proceedings.

UNITED STATES DISTRICT JUDGE