UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CROSBY LEGACY COMPANY, LLC, d/b/a
PHILIP CROSBY ASSOCIATES,

Plaintiff,

v.

TECHNIPFMC PLC,

Defendant.

Civil Case No. 18-10814-NMG

**DEFENDANT'S MOTION FOR RECONSIDERATION OF MARCH 5, 2025 ORDER
[DOCKET NO. 223] AND FED. R. CIV. P. 72(B)(2) RESPONSE TO PLAINTIFF'S
OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS
ON MOTIONS FOR SUMMARY JUDGMENT**

Defendant TechnipFMC, plc ("TechnipFMC") respectfully moves that this Court

reconsider its Order (Docket No. 223) regarding the Magistrate Judge's Report and

Recommendations on Motions for Summary Judgment (the "Report"). The Court decided this

dispositive issue on March 5, 2025 before allowing TechnipFMC the opportunity to file its

response to plaintiff Crosby Legacy Company, LLC d/b/a Philip Crosby Associates ("PCA")'s

Objections (the "Objections") to the Report. TechnipFMC's response was not due until March

6, 2025. *See* Fed. R. Civ. P. 72(b)(2) ("A party may respond to another party's objections within

14 days after being served with a copy").

Consideration of TechnipFMC's response to PCA's Objections is especially important in

this case because PCA's argument that it somehow was "sandbagged" with respect to its failure

to sue the correct party on Count II was highly misleading. PCA was on written notice from the

time the Answer was filed that TechnipFMC denied it was the successor to FMC. Moreover, a

TechnipFMC witness expressly testified at deposition that FMC remained an extant corporation

1

that PCA could have, but inexplicably did not, sue.  The Court's Order, made without the benefit

or consideration of TechnipFMC's response, should be reconsidered, and a new Order issued

after consideration of TechnipFMC's response.

TechnipFMC now presents its response to PCA's Objections herein.

The Court's Order is premised upon the incorrect statement that TechnipFMC waited

until summary judgment to "argue[] for the very first time in the course of the litigation [] that it

was not a party to the contract."  (Docket No. 223 at 1).  **Defendant timely preserved that**

**defense on October 20, 2021 by filing an Answer that expressly denied the only averments**

**in the Complaint that TechnipFMC was liable on that contract.  TechnipFMC denied the**

**allegation in paragraph 3 that, "TechnipFMC is the successor to FMC, a corporation**

**previously organized under the laws of Delaware. . . ."**  (Docket No. 1 ¶ 3; Docket No. 41 ¶

3).  **And in responding to Count II, the Answer denied paragraph 84's allegation that,**

**"The 2014 License Agreement required that TechnipFMC (as successor to FMC) obtain**

**PCA's prior written consent to use the 2014 Licensed Materials."**  (Docket No. 1 ¶ 84;

Docket No. 41 ¶ 84).  Those denials gave PCA adequate and timely notice that TechnipFMC

disputed PCA's successor liability theory, and that it was suing the wrong party on Count II.

Tellingly, PCA never argued to the Magistrate Judge that it was surprised or prejudiced by this

argument; it made this assertion for the first time to this Court.

As set forth below, this Court is also incorrect in holding that TechnipFMC waived this

defense by failing to label it as an affirmative defense in the Answer.  A defense must be pleaded

as an "affirmative defense" only if it "shares the common characteristic of a bar to the right of

recovery even if the general complaint were more or less admitted to."  *Wolf v. Reliance*

*Standard Life Ins. Co.*, 71 F.3d 444, 449 (1st Cir. 1995) (quoting *Jakobsen v. Mass. Port Auth.,*

520 F.2d 810, 813 (1st Cir. 1975)).  That does not apply here.  TechnipFMC's defense concerns a failure by plaintiff to prove an essential element of its claim – that the 2014 FMC Agreement was a contract between the plaintiff and the defendant – on which PCA bears the burden of proof.  The plaintiff has only itself to blame for failing to appreciate the open and obvious fact that, by its express terms, TechnipFMC was not a party to the 2014 FMC Agreement, and TechnipFMC denied successor liability.

For the reasons set forth below, this Court should vacate that portion of its March 5, 2025 Order concerning Count II, overrule PCA's Objections, and adopt the Magistrate Judge's recommendation that summary judgment enter for TechnipFMC on Count II.

## BACKGROUND

On June 14, 2016, FMC (a Delaware corporation), FMC Technologies SIS Limited (a private limited company incorporated under the laws of England and Wales, referred to as "Topco", and which later became TechnipFMC), and Technip S.A. (a French *société anonyme*) entered into a "Business Combination Agreement" (the "BCA").  (Docket No. 212-7 (Ex. No. 205)).  The BCA's terms make clear that FMC would survive "as a wholly owned subsidiary of [TechnipFMC]. . . "  (*Id.* at 2).  The transaction closed on January 16, 2017.  On or about April 8, 2018, TechnipFMC filed a Form 10-K for 2017 confirming that FMC "continue[s] as the surviving company and as a wholly-owned indirect subsidiary of TechnipFMC."  (Docket No. 212-40 at 114 (quoted in Report at 4-5)).  That Form 10-K, and the BCA referenced in it, are publicly available documents to which PCA would have had access when it filed its Complaint.[1]

---

[1] Available at
https://www.sec.gov/Archives/edgar/data/1681459/000168145918000049/technipfmc20171231
-10k.htm and https://www.technipfmc.com/en/investors/financial-news-releases/press-
release/execution-of-business-combination-agreement/.

PCA filed this suit on April 26, 2018, naming TechnipFMC as the sole defendant. (Docket No. 1). **Paragraph 3 of PCA's Complaint alleged that, "TechnipFMC is the successor to FMC, a corporation previously organized under the laws of Delaware. . . ."** (*Id.* ¶ 3). **TechnipFMC expressly denied that allegation.** (Docket No. 41 ¶ 3). **TechnipFMC's Answer also denied paragraph 84's allegation that, "The 2014 License Agreement required that TechnipFMC (as successor to FMC) obtain PCA's prior written consent to use the 2014 Licensed Materials."** (Docket No. 1 ¶ 84; Docket No. 41 ¶ 84). PCA thereby had timely notice that TechnipFMC disputed PCA's successor liability theory. PCA's Objection misleadingly failed to acknowledge that it was on written notice as of October 20, 2021 that TechnipFMC denied it was the successor to FMC or the 2014 FMC Agreement.

PCA's counsel had at least nine months to review the Complaint, together with publicly available information such as the BCA and Form 10-K, and re-evaluate prior counsel's decision not to name FMC as a defendant. The August 19, 2022 deadline for motions to amend passed without any such motion.

Discovery began in earnest in the summer and fall of 2022. PCA had a copy of the 2017 Form 10-K, and produced it to TechnipFMC on March 1, 2023. ((Docket No. 212-7 (Ex. No. 205)). Neither party sought discovery relevant to the veil-piercing issues; there was no need to do so because PCA's Complaint did not give notice of any veil-piercing theories.

Depositions of the parties began in September 2023 and were concluded in November 2023. Janet Robinett testified as TechnipFMC's Rule 30(b)(6) designee on November 15 and 16, 2023. (Exs. 189 & 190). In PCA's misleadingly selective quotation from her deposition transcript, it states that she "unambiguously admitted, 'FMC Technologies did not exist after

January 2017.'"  (Objections at 4).[2]  **This overlooks that Ms. Robinett later testified at her deposition that, "I'm sorry, I do need to make a clarification. I misspoke earlier. I think I commented that FMC Technologies does not exist anymore and technically, the legal entity does."**  (**Tab A** at 54).  PCA's counsel had an opportunity to ask follow-up questions based upon that response but chose not to.

After discovery closed, PCA filed a motion for summary judgment in its favor on Count II on May 3, 2024.  (Docket No. 199).  On June 3, 2024, TechnipFMC filed its opposition and cross-motion for summary judgment on all counts of the Complaint.  (Docket No. 208). TechnipFMC therein argued that all claims premised upon alleged breaches of the 2014 FMC Agreement should be dismissed because TechnipFMC never was a party to that contract.  (*Id.* at 13-14).  In support of that argument, TechnipFMC filed a Declaration of Kathleen Gehlhausen, a Senior Corporate Paralegal for FMC and TechnipFMC, attesting that "FMC has continued to function as an extant Delaware corporation in good standing from January 17, 2017 through to the present."  (Docket No. 209-140 (Ex. 198)).  To corroborate that assertion, Ms. Gehlhausen attached each of FMC's annual reports filed with the Delaware Secretary of State's Office from 2017 to present.  (*Id.* ¶ 4).  She also attested that, "FMC is the legal employer of 2,338 of TechnipFMC's 3,352 U.S.-based employees."  (*Id.*)

On June 24, 2024, PCA filed its opposition to TechnipFMC's motion.  It gave no indication that it was surprised, or prejudiced in any way, by the timeliness of TechnipFMC's assertion that Count II should be dismissed because PCA sued the wrong party.  (Docket No.

---

[2]    In context, Ms. Robinett made this statement in response to a question about her LinkedIn profile, which stated that her employer as of 2017 was TechnipFMC.  Neither the question nor the answer related to successor liability issues.

210 at 1-2). PCA instead addressed this issue on the merits, arguing that Delaware law governed interpretation of the 2017 transaction, and that TechnipFMC was the legal successor to FMC's obligations under the 2014 FMC Agreement. (*Id.* at 1).[3] Plaintiff also argued that *de facto* merger theory and Massachusetts law did not apply. (*Id.* at 2).

The Magistrate Judge held oral argument on the cross-motions for summary judgment on December 4, 2024. At the hearing, PCA did not state that it had suffered any prejudice from the timeliness of TechnipFMC's defense that it was not a successor to the 2014 FMC Agreement, nor did PCA argue that TechnipFMC had in any way waived that defense. PCA's counsel also argued – consistent with its earlier-filed Reply and Opposition – that there had been a *de jure*, but not a *de facto*, merger, and that Delaware law governed the transaction. (Docket No. 217 at 29, 33).

On February 6, 2025, the Magistrate Judge issued her Report recommending that this Court enter summary judgment for TechnipFMC on Count II because it was the wrong defendant on that claim. (Report at 13-15). PCA filed its Objections to the Report on February 20, 2025. Therein, PCA asserted **for the first time** that: TechnipFMC waived its privity-based defense to Count II; that Massachusetts law, rather than Delaware law, governs the successor liability question; and that TechnipFMC is liable on a "*de facto*" merger theory. It was highly prejudicial and unfair to TechnipFMC that the Court ruled upon PCA's brand new arguments on dispositive issues without even waiting for defendant to respond to them.

---

[3]    A critical flaw in PCA's argument – which TechnipFMC noted in its summary judgment briefing, but which the Magistrate Judge did not address in her Report – is that it assigns to TechnipFMC all the contract's burdens, but none of its benefits. If TechnipFMC is FMC's "successor", then it presently enjoys a perpetual, enterprise-wide license to use all the Licensed PCA Materials. If that is true, this case never would have been filed in the first place.

<u>ARGUMENT</u>

I.     THE MAGISTRATE JUDGE CORRECTLY HELD THAT TECHNIPFMC COULD
       NOT BE SUED ON COUNT II BECAUSE IT NEVER WAS A PARTY OR
       SUCCESSOR TO THE 2014 FMC AGREEMENT.

As plaintiff, PCA bears the burden of proving each element of Count II, including the

required element that defendant had a contract with plaintiff.  On its face, it was plainly obvious

that the counterparty to the 2014 FMC Agreement was FMC, not TechnipFMC.  (Docket No. 1-

1 at 4).  TechnipFMC did not even exist until three years later.  The Magistrate Judge's

conclusion that TechnipFMC was the wrong defendant on Count II is fundamentally sound,

both factually and legally.  PCA had every opportunity within the applicable scheduling order

deadline to amend its complaint to add FMC as a defendant on Count II, but it inexplicably

failed to do so.[4]  None of PCA's Objections to the Magistrate Judge's Report have any merit.

    a.  TechnipFMC's Defense Was Not An Affirmative Defense That Needed To Be
       Labeled As Such In The Answer; Defendant Timely Preserved This Defense
       <u>Through Specific Denials That It Was FMC's Successor</u>.

Fed. R. Civ. 8(c)(1) requires that a responsive pleading "must affirmatively state any

avoidance or affirmative defense", including those appearing in a list of eighteen affirmative

defenses.  The defense at issue is not one of them.  "This subdivision of the basic pleading rule

deals with affirmative defenses and should be read in conjunction with, and distinguished from,

Rule 8(b), which deals with denials or negative defenses that directly contradict elements of the

plaintiff's claim for relief."  Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1270 (4th ed.).  "[A]

defendant generally need not raise a negative defense in its answer to avoid waiver."  *Hunt*

*Valley Baptist Church, Inc. v. Baltimore Cnty., Md.*, 2019 WL 3238950, at *8 (D. Md. July 17,

---

[4]     It is telling that PCA's Objection offers no explanation of why it did not do so.

4932-6895-9012, v. 2

2019) (citing *RCSH Operations, L.L.C. v. Third Crystal Park Assoc.*, 115 F. App'x 621, 629 (4th Cir. 2004); *see also Nyberg v. Portfolio Recovery Assocs., LLC*, 2016 WL 3176585, at *3 (D. Or. June 2, 2016) ("Unlike affirmative defenses, negative defenses typically do not have to be pled to avoid waiver.").

The test for determining whether a given defense is an "affirmative defense" subject to Fed. R. Civ. 8(c)(1) is whether it "shares the common characteristic of a bar to the right of recovery even if the general complaint were more or less admitted to." *Wolf*, 71 F.3d at 449.  "If an argument can at most 'negate an element of the plaintiff's claim, it is not appropriately considered an affirmative defense.'" *Sesto v. Slaine*, 171 F.Supp.3d 194, 206 (S.D.N.Y. 2016) (quoting *Etienne v. Wal-Mart Stores, Inc.*, 197 F.R.D. 217, 221 (D. Conn. 2000)).

"Rule 8(c)(1) does not require a defendant to affirmatively plead that the plaintiff sued the wrong party." *Boddicker v. Esurance, Inc.*, 758 F. Supp. 2d 898, 908 (D.S.D. 2010) v*acated on other grounds by* 770 F. Supp. 2d 1016 (D.S.D. 2011). "Instead, because a plaintiff is the master of his complaint, he bears the burden to seek relief from the correct defendant."  *Id.* (*citing BP Chems. Ltd. v. Jiangsu Sopo Corp.,* 285 F.3d 677, 685 (8th Cir. 2002)).

TechnipFMC's defense – that it was not a party or successor to the 2014 FMC Agreement – is a "negative defense" that was timely preserved through the Answer's denials of paragraphs 3 and 84 of the Complaint.  (Docket No. 41).  That was sufficient.  Defendant was not obligated to needlessly label this as an "affirmative defense" because it was not an avoidance, it was not a bar to the right of recovery even if the complaint was admitted, and defendant does not bear the burden of proof on this issue.

If there was any waiver, it was by PCA.  Plaintiff never argued to the Magistrate Judge that TechnipFMC had failed to timely preserve the defense, or that it was prejudiced in any by

8

the timeliness of TechnipFMC's privity-based defense to Count II.  As noted above, PCA's Objection presented a brand-new argument – which the Magistrate Judge never even had a chance to consider – that TechnipFMC waived its defense that it was not a party or successor to the 2014 FMC Agreement.  It is black letter law that arguments never raised before the Magistrate Judge cannot be asserted for the first time in an objection to a report and recommendations.  *Ryan v. Greif, Inc.*, 708 F. Supp. 3d 148, 160 (D. Mass. 2023) (*citing Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987)).  "Parties must take before the magistrate, "not only their 'best shot' but all of their shots."  *Borden*, 836 F.2d at 6 (quoting *Singh v. Superintending School Committee,* 593 F. Supp. 1315, 1318 (D. Me. 1984)).  "This concept is premised on the same basis as the rule that an appellate court will not consider arguments not raised below except in the most compelling circumstances."  *Id.*

Because this Court issued its Order one day before TechnipFMC's deadline for its Fed. R. Civ. P. 72(b)(2) response to PCA's Objections, TechnipFMC was deprived of the opportunity to even respond to PCA's brand-new arguments.  That offends basic notions of fairness, was highly prejudicial to TechnipFMC, and warrants reconsideration of the Order.

The Court's Order notes that TechnipFMC did not address successor liability in its unsuccessful Rule 12(b)(6) motion to dismiss Count II.  That does not, however, operate as a waiver, and the defense was then preserved in the Answer.  *See Starr v. Moore*, 849 F. Supp. 2d 205, 211 (D.N.H. 2012) (rejecting argument that defendant, who raised statute of limitations and non-exhaustion defenses in its answer, waived ability to present these defenses at trial due to failure to raise them in an earlier pre-trial motion).  "[A] party does not waive a properly

9

pleaded defense by failing to raise it by motion before trial." *Coons v. Indus. Knife Co.,* 620

F.3d 38, 40 (1st Cir. 2010).[5]

PCA's argument that TechnipFMC waived its defense to Count II by objecting to PCA's

interrogatory no. 10 also lacks merit.  That interrogatory asked defendant to "[f]ully describe

and explain the corporate structure of TechnipFMC, including but not limited to the

identification of all subsidiaries and affiliates to TechnipFMC and a description of

TechnipFMC's ownership interest in each."  (Objections at 5-6; Docket No. 209-120 (Ex. 178)).

After TechnipFMC justifiably objected to the scope and relevance of that interrogatory, PCA

never responded by seeking to meet and confer, offering to narrow its scope, or filing a motion

to compel.  It was unnecessary for PCA to generate a discovery dispute about interrogatory no.

10 because the most relevant piece of information it sought – the relationship between

TechnipFMC and FMC – already was a matter of public record.  As noted above, not later than

March 1, 2023, PCA obtained a copy of the Form 10-K confirming that FMC had survived the

merger as an extant Delaware corporation and wholly owned indirect subsidiary of

TechnipFMC.  *Supra* at 4; (Docket No. 209-140 (Ex. 198) at 114).

In sum, TechnipFMC timely preserved its defense that it could not be sued on Count II.

To the extent that PCA failed to follow up and seek additional discovery concerning

TechnipFMC's defense, it has only itself to blame.  Plaintiff always carries the ultimate burden

of proving that defendant was a party to the contract that allegedly was breached.  *See*

*Boddicker*, 758 F. Supp. 2d at 908.

---

[5]    As discussed in *Coons*, Fed. R. Civ. P. 12(h)(1) presents a narrow exception to this rule:
if a party files a Rule 12 motion without raising a defense based upon lack of personal
jurisdiction, improper venue, insufficient process, or insufficient service of process, it waives
those defenses.  The defense here does not fall within any of those categories.

b.  There Was No *De Jure* Merger Because FMC Continued To Exist As A Subsidiary
Of TechnipFMC Following The 2017 Business Combination With Technip.

In rejecting PCA's argument that there was a *de jure* merger of FMC into TechnipFMC, the Magistrate Judge correctly noted that plaintiff was relying upon case law that was "inapplicable where FMC did not disappear and where FMC did not directly merge with either Technip S.A. or TechnipFMC."  (Report at 15).  Where, as here, FMC still exists as a separate entity and is an indirect subsidiary of TechnipFMC, it is simply wrong, and factually incorrect, to repeatedly assert that there was a *de jure* merger between them.[6]

A "*de jure* merger", sometimes referred to as a "statutory merger", is one that follows statutory formalities and results in "the absorption of one organization (esp. a corporation) *that ceases to exist* into another that retains its own name and identity and acquires the assets and liabilities of the former."  Black's Law Dictionary (12th ed. 2024), "Merger" (emphasis added); *see also Fizzano Bros. Concrete Products, Inc. v. XLN, Inc.*, 42 A.3d 951, 954 (Pa. 2012) (using the terms statutory or *de jure* merger interchangeably).  This term is used in contrast with "*de facto* merger", which is "a transaction does not meet the statutory requirements for a merger" but "has the economic effect of a statutory merger."  Black's Law Dictionary (12th ed. 2024), "Merger."

---

[6]      *See e.g. Rice v. First Energy Corp.*, 339 F. Supp.3d 523, 540-41 (W.D. Pa. 2018) ("Plaintiffs' conclusory allegation—that there was a "*de jure* merger" between GenOn and NRG—is factually incorrect. The evidence shows that NRG Energy acquired GenOn Energy, Inc. as a subsidiary, which still exists today as a separate entity. . . . As such, GenOn Energy, Inc. was never merged into NRG Energy, and therefore, NRG Energy is not GenOn Energy, Inc.'s successor, but its parent."); *Santa Maria v. Owens-Illinois, Inc.*, 808 F.2d 848, 861-62 (1st Cir. 1986) (affirming that continued existence of predecessor corporation which sold some assets to purchasing corporation precluded finding of successor liability of purchasing corporation on basis of either *de facto* or *de jure* merger of two corporations).

11

PCA is unable to cite any case law finding that a *de jure* merger occurred with respect to a corporation that continued its separate corporate existence after the transaction in question.  At page 8 of the Objections, PCA cites *In re Asbestos Litigation (Bell)* for the proposition that, "[a] [*de jure*] merger occurs when the seller is absorbed into the purchaser."  517 A.2d 697, 699 (Del. Super. 1986) (*citing Savini v. Kent Mach. Works, Inc.*, 525 F. Supp. 711, 715 (E.D. Pa. 1981)) (applying Pa. law).  But the immediately following sentence in that case makes clear that, "Plaintiffs do not claim that the transaction was a *de jure* merger"; this discussion from *Bell* is dicta.  *Id.*  Moreover, FMC was not "absorbed" into TechnipFMC; it remained an extant corporation after the merger.  The *Savini* case cited by PCA does not support its argument either, as that case granted summary judgment for defendant, finding that the purchasing corporation did not expressly or impliedly agree to assume the selling corporation's liabilities such that there was no "*de facto* merger."  525 F. Supp. at 715-716.  The remaining string cite of random cases that PCA cites at pages 8-9 and 12 of its Objections are likewise totally irrelevant.[7]

In sum, the Magistrate Judge correctly held that there was no *de jure* merger of FMC into TechnipFMC.

---

[7]    *Natural Energy Development, Inc. v. Shakespeare–One Limited Partnership*, 2013 WL 3809250 (Del. Ch. 2013) (dispute between general partner and limited partner limited partnership concerning compensation of managing general partner); *W. Va. Highlands Conservancy v. ERP Env't Fund, Inc.*, 99 4th 194 (4th Cir. 2024) (dispute between environmental groups and receiver for bankrupt coal mine concerning enforcement of consent decrees); *Johnson v. Smithkline Beecham Corp.*, 724 F.3d 337 (3rd Cir. 2013) (appeal from trial court's denial of defendant's motion to remand based upon lack of diversity of citizenship); *Quaker State Dyeing & Finishing Co. v. ITT Terryphone Corp.*, 461 F.2d 1140 (3rd Cir. 1972) (affirming dismissal of action for lack of diversity jurisdiction); *O'Grady v. Safety-Kleen Systems, Inc.*, 2020 WL 1514604 (D. Mass. Mar. 30, 2020) (granting in part and denying in part motion to remand to state court based upon lack of diversity jurisdiction); *Int'l Ass'n of Machinists and Aerospace Workers v. Northeast Airlines, Inc.*, 473 F.2d 549 (1st Cir. 1972) (dispute between a labor union and an airline concerning potential role of labor union in negotiation of proposed merger with another airline).

c.  PCA's New Veil-Piercing Arguments Are Untimely Asserted And Unsupported By
The Record.

Having come to the inexcusably late realization that it sued the wrong party, PCA

attempted to make up for that by injecting brand-new veil-piercing arguments into this case for

the first time eight years into this litigation.  Although PCA confuses matters by grouping its

veil-piercing arguments under an argument heading concerning *de jure* merger, they are

conceptually distinct from PCA's baseless contention that FMC ceased to exist after 2017.

Through the veil-piercing arguments, PCA is attempting to argue that, even if FMC did survive

as a separate corporate entity and indirect subsidiary of TechnipFMC, as an equitable matter,

this Court should pierce FMC's corporate veil in order to reach TechnipFMC because FMC

allegedly is "a shell which exists on paper" and "an alter ego of its controlling parent."  *See*

(Objections at 6, 10, 12).  For several reasons, this Court should overrule any PCA's baseless

objections based upon veil-piercing.

*First*, PCA's veil-piercing arguments are inexcusably late, and TechnipFMC would be

prejudiced if this Court were to consider these fact-intensive issues more than a year after

discovery closed.  "[A] plaintiff wishing to pierce the corporate veil to hold a particular

defendant liable must set forth that intention in the complaint, and must do so in a manner that,

at a minimum, satisfies the notice pleading requirements of Rule 8(a) [of the Federal Rules of

Civil Procedure]."  *Geiman v. L.E.C. Civil Contractors, LLC*, 2024 WL 1659717, at *4 (D.

Mass. Apr. 17, 2024) (*quoting Northstar Marine, Inc. v. Huffman*, No. 13-0037-WS-C, 2014

WL 4854843, at *9 n.16 (S.D. Al. Sept. 29, 2014) (collecting cases)).  That did not occur.

PCA's Complaint did not directly or indirectly allege that TechnipFMC was liable for FMC's

obligations under the 2014 Agreement because FMC became a "shell" or "alter ego" of

TechnipFMC after the January 2017 merger with Technip.  (Docket No. 1).  Moreover, PCA

never presented any veil-piercing arguments to the Magistrate Judge, either in briefing or oral argument; it is too late to raise these arguments for the first time in objections to a report and recommendations.  *See Ryan*, 708 F. Supp. 3d at 160; *Borden*, 836 at 6.

*Second*, corporate veil-piercing is an "exceptionally rare" equitable doctrine that should be sparingly invoked when necessary to prevent fraud or injustice.  *See Verdantus Advisors, LLC v. Parker Infrastructure Partners, LLC*, 2022 WL 611274, at *2 (Del. Ch. Mar. 2, 2022) (holding that plaintiff's conclusory allegations did not amount to "the exceptionally rare stuff of veil-piercing"); *I Am Athlete, LLC v. IM EnMotive, LLC*, 2023 WL 8933592, at *4 (Del. Ch. Dec. 27, 2023) (quoting *Yu v. GSM Nation, LLC*, 2017 WL 2889515, at *2 (Del. Ch. July 7, 2017) ("A claim premised on veil piercing 'is an equitable claim.'"); *Manichaean Capital, LLC v. Exela Technologies, Inc.*, 251 A.3d 694, 713 (Del. Ch. 2021) ("Delaware embraces and will protect 'corporate separateness'; but Delaware will not countenance the use of the corporate form as a means to facilitate fraud or injustice.").  Here, there is no evidence that the 2017 transaction involved any type of fraud, nor is there evidence that injustice would ensue if PCA had sued FMC instead of TechnipFMC.  As noted in Appendix A, numerous other plaintiffs filed claims against FMC after 2017.  There is no reason why PCA could not have done so as well.

*Third*, although PCA argues that "the officers of FMC were . . . identical to the officers of TechnipFMC," "'duplication of some or all of the directors or executive officers' is not fatal to maintaining legally distinct corporate forms."  *Trinity Industries, Inc. v. Greenlease Holding Company*, 903 F.3d 333, 367 (3rd Cir. 2018) (quoting *United States v. Bestfoods*, 524 U.S. 51, 62 (1998)).  "Mere control and even total ownership of one corporation by another is not sufficient to warrant the disregard of a separate corporate entity," and "a common central

management alone is not a proper basis for disregarding separate corporate existence." *Skouras v. Admiralty Enterprises, Inc.*, 386 A.2d 674, 681 (Del. Ch. 1978).

*Fourth*, although PCA asserts that "former FMC employees became TechnipFMC employees following the merger", it has no *bona fide* record support for that assertion; PCA cannot, for example, say how many FMC employees it believes became TechnipFMC employees. It makes no attempt to rebut Kathleen Gehlhausen's sworn statement that, "FMC is the legal employer of 2,338 of TechnipFMC's 3,352 U.S.-based employees." (Docket No. 209-140 (Ex. 198) ¶ 4).

*Fifth*, PCA's bare and unsupported assertion that "following the merger, FMC did not conduct any business" is similarly untrue. Publicly available information demonstrates that FMC has, for example, registered at least 199 patents in its own name after the January 2017 combination with Technip. *See* Appendix B. And FMC has been a plaintiff or defendant in at least twenty (20) civil litigation matters after 2017. *See* Appendix A.

*Finally*, it is irrelevant that "TechnipFMC did not contest it was FMC's successor when investigated by the DOJ for pre-merger criminal conduct perpetrated by FMC." Agreements that TechnipFMC made in a deferred prosecution agreement with the Department of Justice, in consideration of a conditional release of liability, are not binding or in any way dispositive in this entirely unrelated civil contract dispute with PCA. The Magistrate Judge properly ignored PCA's arguments concerning this matter, which were intended as a distraction from the main issues and *ad homimen* attack on TechnipFMC.

In sum, this Court should overrule any PCA objections based upon attempts to pierce the corporate veil of FMC and impute contractual liability to its parent TechnipFMC.

    d.  PCA Waived Any Argument That TechnipFMC Is Liable Under A "*De Facto*"
        <u>Merger Theory; Even If Not Waived, The Doctrine Does Not Apply Here</u>.

PCA's *de facto* merger argument – another variation on its new attempts at veil piercing – fails for many of the same reasons discussed above. PCA's pleadings never gave defendant notice that it would seek to hold TechnipFMC liable for FMC's contractual obligations on a *de facto* merger theory, and therefore, PCA is barred from pressing this argument. *See* 19 Am. Jur. 2d Corporations § 2290 ("In attempting to charge an alleged successor corporation with liability for the obligations of another corporation on the theory of *de facto* merger, the complaint must give the defendant fair notice that the plaintiff claims its liability on the basis of a *de facto* merger."). And because PCA never argued for *de facto* merger theory before the Magistrate Judge, it cannot do so for the first time in an objection to a report and recommendations eight years after the litigation was commenced. *See Ryan*, 708 F. Supp. 3d at 160; *Borden*, 836 at 6.

Not only did PCA fail to affirmatively advocate for application of the *de facto* merger, PCA expressly argued that it did not apply. *Supra* at 5-6. For example, while PCA extensively relies upon *Miliken & Duro Textiles, LLC*, 451 Mass. 547, 556 (2008) at pages 13-15 of its Objections, in its prior summary judgment briefing before the Magistrate Judge, PCA argued that *Miliken* and similar Massachusetts cases were "inapposite." (Docket No. 210 at 2). PCA's shifting arguments should not be tolerated because "[a] party cannot successfully urge a magistrate judge to apply a particular body of law and then, dissatisfied with the outcome that he invited, ask the district court to apply some other body of law." *Patton v. Johnson*, 915 F.3d 827, 837 (1st Cir. 2019). "[I]t would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and — having received an unfavorable recommendation — shift gears before the district judge." *Id.* (*quoting Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 991 (1st Cir. 1988)).

Even if this Court were inclined to entertain PCA's brand new *de facto* merger argument based upon Massachusetts law (it should not do so), it should not disturb the Magistrate Judge's holding concerning Count II.  As the Magistrate Judge correctly held, Delaware law, not Massachusetts law, governs interpretation of the 2017 transaction, and whether it involved a *de facto* or *de jure* merger of FMC into TechnipFMC.

"Under Delaware law, a finding of a de facto merger requires a showing that: (1) one corporation has transferred all of its assets to another corporation; (2) payment was made in stock, issued by the transferee directly to the shareholders of the transferor corporation; and (3) in exchange for their stock, the transferee agreed to assume all the debts and liabilities of the transferor."  *Marnavi S.p.A. v. Keehan*, 900 F.Supp.2d 377, 397 (D. Del. 2012).  The terms of the parties' BCA do not provide any support for the second or third elements.  (Docket No. 212-7 (Ex. No. 205)).  For example, while Section 1.2(a) of the BCA states that "from and after the Technip Effective Time all of the property, rights, privileges, immunities, powers and franchises of Technip and [TechnipFMC] shall vest in [TechnipFMC] and all of the debts, liabilities and duties of Technip and [TechnipFMC] shall become the debts, liabilities and duties of [TechnipFMC]", it makes no similar statement concerning FMC.  (*Id.* at § 1.2(a)).  This reflects that FMC, unlike Technip, survived the merger and retained its own assets and liabilities after 2017.  PCA's allegations that "FMC did not conduct any business after the merger, as all business was conducted by TechnipFMC" are simply false and unsupported by any evidence in the record.  (Objections at 15); *supra* at 14-15.

The *Miliken* case cited by PCA is inapposite because it applied Massachusetts rather than Delaware law.  Moreover, it is distinguishable on its facts because the challenged transaction in that case was found to be a "comprehensive and nefarious scheme to acquire the

assets of Old Duro, while shedding Old Duro's debts to unsecured creditors." 451 Mass. at 565.

In contrast here, there is no equivalent evidence that the 2017 business combination of FMC, TechnipFMC, and Technip was designed to defraud creditors such as PCA. FMC continued in business after the BCA. PCA could have, but did not, sue FMC. Accordingly, the equitable doctrine of *de facto* merger does not apply here.

## **CONCLUSION**

For the foregoing reasons, this Court should vacate that portion of its March 5, 2025 Order concerning Count II, overrule PCA's objections, adopt the Magistrate Judge's recommendation, and enter summary judgment dismissing Count II.[8]

Respectfully submitted,

TECHNIPFMC PLC,

By its attorneys,

*/s/ Andrew R. Dennington*

Kurt B. Fliegauf (BBO # 564320)
Andrew R. Dennington (BBO # 666892)
CONN KAVANAUGH ROSENTHAL
PEISCH & FORD LLP
One Federal Street, 15th Floor
Boston, MA 02210
Tel: 617-482-8300
kfliegauf@connkavanaugh.com
adennington@connkavanaugh.com

Dated: March 6, 2025

---

[8] TechnipFMC otherwise agrees with the Magistrate Judge's conclusion that disputed issues of fact warranted denial of PCA's affirmative motion for summary judgment on Count II.

## **CERTIFICATE OF COMPLIANCE WITH LR 7.1**

I hereby certify that I held a telephone conference with PCA's counsel, Attorney Nicholas Armington, at 11:00 am on March 6, 2025 to meet-and-confer regarding the relief sought in this motion.  PCA's counsel responded that it would oppose the motion.

*/s/ Andrew R. Dennington*
Andrew R. Dennington (BBO # 666892)


## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was filed electronically on March 6, 2025, and will be served electronically on counsel of record by operation of the ECF system.

*/s/ Andrew R. Dennington*
Andrew R. Dennington (BBO # 666892)

4932-6895-9012, v. 2

## APPENDIX A

Partial List of Litigation Matters Involving FMC Technologies, Inc. after 2017

| Date Filed | District | Case No. | Case Title |
|---|---|---|---|
| 5/22/2017 | W.D. Okla. | 5:2017cv00581 | Gonzales v. FMC Technologies Inc. |
| 5/22/2017 | W.D. Okla. | 5:2017cv00580 | Riggs v. FMC Technologies Inc. |
| 8/25/2017 | S.D. Tex. | 4:2017cv02618 | Aderbigbe v. FMC Technologies, Inc. |
| 10/10/2017 | S.D. Tex. | 2:2017cv00317 | Talbert v. FMC Technologies, Inc. et al |
| 11/10/2017 | S.D. Tex. | 4:2017cv03448 | Bharat Forge Ltd. v. FMC Technologies, Inc. et al |
| 12/20/2018 | S.D. Tex. | 4:2018cv04796 | Balderas v. FMC Technologies, Inc. |
| 1/8/2019 | S.D. Tex. | 4:2019cv00070 | Havins v. FMC Technologies, Inc. d/b/a TechnipFMC |
| 2/21/2019 | S.D. Tex. | 4:2019cv00611 | Green v. FMC Technologies, Inc. et al |
| 3/11/2020 | W.D. Tex. | 1:2020cv00261 | Shirley v. FMC Technologies, Inc. et al |
| 4/22/2020 | S.D. Tex. | 4:2020cv01435 | Jason R. Bailey, MD, P.A. et al v. Blue Cross & Blue Shield of Texas Inc et al |
| 6/11/2020 | S.D. Tex. | 4:2020cv02059 | Hebert v. FMC Technologies, Inc. |
| 3/19/2021 | S.D. Tex. | 4:2021cv00917 | Jason R. Bailey, MD, P.A. et al v. Blue Cross & Blue Shield of Texas Inc et al |
| 6/1/2021 | E.D. Cal. | 1:2021cv00874 | Garza v. FMC Technologies et al |
| 9/10/2021 | W.D. Tex. | 7:2021cv00159 | Garza v. FMC Technologies et al |
| 7/6/2022 | S.D. Tex. | 4:2022cv02231 | FMC Technologies, Inc. v. TLS Consultants, Inc. |
| 12/6/2022 | D. Kan. | 2:2022cv02505 | Casasola v. Control Systems International, Inc. et al |
| 4/28/2023 | S.D. Tex. | 4:2023cv01584 | Pietsch v. FMC Technologies, Inc. |
| 7/19/2023 | E.D. Tex. | 1:2023cv00277 | Rodriguez v. M & M Industrial Services, Inc. et al |
| 9/26/2023 | S.D. Tex. | 4:2023cv03624 | Mitru v. Transocean Offshore Deepwater Drilling Inc. et al |
| 1/10/2024 | S.D. Tex. | 4:2024cv00100 | Bill Bridges et al v. FMC Technologies, Inc. |

4932-6895-9012, v. 2

## APPENDIX B

Patents Registered By FMC Technologies, Inc. After 2017

| Title | Grant date | Publication numbers |
|---|---|---|
| (US12221972)<br>Pump comprising a balance arrangement and a related method | (US12221972)<br>2025-02-11 | US12221972<br>US20250003416 |
| (US12210131)<br>Seal pocket detection assembly | (US12210131)<br>2025-01-28 | US12210131<br>US20240385344 |
| (US12172740)<br>Submersible remote operated vehicle tool change control | (US12172740)<br>2024-12-24 | US12172740<br>US20240278889 |
| (US12196051)<br>Tubing hanger assembly with adjustable load nut | (US12196051)<br>2025-01-14 | US12196051<br>US20240191589 |
| (US12116868)<br>Method and systems for subsurface carbon capture | (US12116868)<br>2024-10-15 | US12116868<br>US20240110464 |
| (US12196048)<br>Reel deployment for centralized pad system | (US12196048)<br>2025-01-14 | US12196048<br>US20240093559 |
| (US12135018)<br>Method and systems for positive displacement of an actuation device | (US12135018)<br>2024-11-05 | US12135018<br>US20240084789 |
| (US12226894)<br>Submersible remote operated vehicle tool interchange | (US12226894)<br>2025-02-18 | US12226894<br>US20240075636 |
| (US12203355)<br>Modular manifold system for continuous fluid pumping into a well | (US12203355)<br>2025-01-21 | US12203355<br>US20240026765 |
| (US12024966)<br>Wireline pressure control string with pumpdown assembly | (US12024966)<br>2024-07-02 | US12024966<br>US20230399908 |
| (US12098712)<br>Hydraulic fracturing pump system | (US12098712)<br>2024-09-24 | US12098712<br>US20230374980 |
| (US12140011)<br>Modular system and manifolds for introducing fluids into a well | (US12140011)<br>2024-11-12 | US12140011<br>US20230366305 |
| (US11939823)<br>One-piece production/annulus bore stab with integral flow paths | (US11939823)<br>2024-03-26 | US11939823<br>US20230304365 |

| Title | Grant date | Publication numbers |
|---|---|---|
| (US12180818)<br>Well fracture systems and methods | (US12180818)<br>2024-12-31 | US12180818<br>US20230296007 |
| (US12060896)<br>Integrated high-pressure unit | (US12060896)<br>2024-08-13 | US12060896<br>US20230250836 |
| (US11912387)<br>Submersible remote operated vehicle tool change control | (US11912387)<br>2024-02-27 | US11912387<br>US20230249791 |
| (US12221866)<br>Flexible pipe connection systems and methods | (US12221866)<br>2025-02-11 | US12221866<br>US20230212928 |
| (US12065906)<br>System and method for an intelligent quick connect disconnect connector (QCDC) | (US12065906)<br>2024-08-20 | US12065906<br>US20230193724 |
| (US11925882)<br>System for degassing and/or separation of fluid streams and methods of using same | (US11925882)<br>2024-03-12 | US11925882<br>US20230191287 |
| (US11920423)<br>Tubing hanger assembly with adjustable load nut | (US11920423)<br>2024-03-05 | US11920423<br>US20230184048 |
| (US11813574)<br>Subsea seawater filtration apparatus | (US11813574)<br>2023-11-14 | US11813574<br>US20230098796 |
| (US11808126)<br>Modular manifold system for continuous fluid pumping into a well | (US11808126)<br>2023-11-07 | US11808126<br>US20230083234 |
| (US11668151)<br>Tubing head spool with adapter bushing | (US11668151)<br>2023-06-06 | US11668151<br>US20230076356 |
| (US11560767)<br>Single run preloaded casing hanger and annulus seal assembly and methods of use thereof | (US20230027141)<br>2023-01-24 | US20230027141<br>US11560767 |
| (US11661958)<br>Integrated high-pressure unit | (US11661958)<br>2023-05-30 | US11661958<br>US20230026798 |
| (US11686164)<br>One-piece production/annulus bore stab with integral flow paths | (US11686164)<br>2023-06-27 | US11686164<br>US20230003088 |
| (US12006780)<br>Systems, devices and methods for orienting a production outlet of a subsea production tree | (US12006780)<br>2024-06-11 | US12006780<br>US20220389783 |

| Title | Grant date | Publication numbers |
|---|---|---|
| (US11959351)<br>Wellhead connecting assembly | (US11959351)<br>2024-04-16 | US11959351<br>US20220372828 |
| (US11686197)<br>Ultrasonic through barrier communication system for in riser communication | (US11686197)<br>2023-06-27 | US11686197<br>US20220364463 |
| (US11549627)<br>Flexible pipe connection systems and methods | (US11549627)<br>2023-01-10 | US11549627<br>US20220356976 |
| (US12129727)<br>Collet-type wellhead connector system | (US12129727)<br>2024-10-29 | US12129727<br>US20220356776 |
| (US12196235)<br>Flow bore guide vane insert | (US12196235)<br>2025-01-14 | US12196235<br>US20220349430 |
| (US11927306)<br>Valve control and/or lubrication system | (US11927306)<br>2024-03-12 | US11927306<br>US20220341542 |
| (US11976541)<br>System and method for an automated and intelligent frac pad | (US11976541)<br>2024-05-07 | US11976541<br>US20220316307 |
| (US11680461)<br>Sliding sleeve valve and systems incorporating such valves | (US11680461)<br>2023-06-20 | US11680461<br>US20220298888 |
| (US12060783)<br>System and method for an automated and intelligent frac pumping | (US12060783)<br>2024-08-13 | US12060783<br>US20220268141 |
| (US11828140)<br>System and methods of use for a blind plug | (US11828140)<br>2023-11-28 | US11828140<br>US20220268133 |
| (US11731289)<br>Submersible remote operated vehicle tool interchange | (US11731289)<br>2023-08-22 | US11731289<br>US20220250256 |
| (US11988062)<br>Coiled piston assembly | (US11988062)<br>2024-05-21 | US11988062<br>US20220243550 |
| (US11813575)<br>Subsea seawater filtration apparatus | (US11813575)<br>2023-11-14 | US11813575<br>US20220241729 |
| (US11875918)<br>Electrical feedthrough system and methods of use thereof | (US11875918)<br>2024-01-16 | US11875918<br>US20220238258 |
| (US12181066)<br>Seat pocket insert | (US12181066)<br>2024-12-31 | US12181066<br>US20220221064 |
| (US11950389)<br>Subsea variable speed drive apparatus | (US11950389)<br>2024-04-02 | US11950389<br>US20220220835 |

| Title | Grant date | Publication numbers |
|---|---|---|
| (US11624268)<br>Flexible pipe connection systems and methods | (US11624268)<br>2023-04-11 | US11624268<br>US20220186592 |
| (US12071827)<br>Modular valve tree | (US12071827)<br>2024-08-27 | US12071827<br>US20220186577 |
| (US11828126)<br>Electrical feedthrough system and methods of use thereof | (US11828126)<br>2023-11-28 | US11828126<br>US20220170339 |
| (US11795775)<br>Electrical feedthrough system and methods of use thereof | (US11795775)<br>2023-10-24 | US11795775<br>US20220154544 |
| (US11624267)<br>Flexible pipe connection systems and methods | (US11624267)<br>2023-04-11 | US11624267<br>US20220145733 |
| (US11814921)<br>Lead impression tool | (US11814921)<br>2023-11-14 | US11814921<br>US20220106850 |
| (US11441365)<br>One-piece production/annulus bore stab with integral flow paths | (US11441365)<br>2022-09-13 | US11441365<br>US20220106843 |
| (US11607626)<br>Adapter for electro-coalescer insulated electrodes with metal sealing for electrodes | (US11607626)<br>2023-03-21 | US11607626<br>US20220072450 |
| (US11754060)<br>Hydraulic fracturing pump system | (US11754060)<br>2023-09-12 | US11754060<br>US20220065237 |
| (US12139424)<br>Electro-coalescer cell with turbulence-inducing shape for maximized performance | (US12139424)<br>2024-11-12 | US12139424<br>US20220064025 |
| (US11614190)<br>Secondary unlock tool for subsea connectors | (US11614190)<br>2023-03-28 | US11614190<br>US20220049803 |
| (US11578553)<br>Tubing hanger assembly with adjustable load nut | (US11578553)<br>2023-02-14 | US11578553<br>US20220042391 |
| (US11486207)<br>One-piece production/annulus bore stab with integral flow paths | (US11486207)<br>2022-11-01 | US11486207<br>US20220034175 |
| (US11274550)<br>Well test module | (US11274550)<br>2022-03-15 | US11274550<br>US20220010677 |

24

| Title | Grant date | Publication numbers |
|---|---|---|
| (US11885194)<br>Rotating indexing coupling (RIC) assembly for installation and orientation of a subsea production tree | (US11885194)<br>2024-01-30 | US11885194<br>US20220010644 |
| (US11236572)<br>Lead impression tool | (US11236572)<br>2022-02-01 | US11236572<br>US20210404282 |
| (US11332995)<br>Coiled piston assembly | (US11332995)<br>2022-05-17 | US11332995<br>US20210396090 |
| (US12085196)<br>Flexible pipe for hydraulic fracturing applications | (US12085196)<br>2024-09-10 | US12085196<br>US20210381627 |
| (US11938422)<br>Differential pressure based automated sand detection and handling system for oil and gas well operations | (US11938422)<br>2024-03-26 | US11938422<br>US20210299595 |
| (US11713650)<br>Diverter valve | (US11713650)<br>2023-08-01 | US11713650<br>US20210293114 |
| (US12092101)<br>System and method of using power of pump to replace packing bores or other components from a fluid end | (US12092101)<br>2024-09-17 | US12092101<br>US20210270263 |
| (US11571701)<br>Cyclone separator and methods of using same | (US11571701)<br>2023-02-07 | US11571701<br>US20210268520 |
| (US11261979)<br>Check valve pivot pin retainer seal | (US11261979)<br>2022-03-01 | US11261979<br>US20210254731 |
| (US11460114)<br>Gate valve with improved bonnet seal assembly | (US11460114)<br>2022-10-04 | US11460114<br>US20210231222 |
| (US11402064)<br>Valve control and/or lubrication system | (US11402064)<br>2022-08-02 | US11402064<br>US20210222829 |
| (US11352758)<br>Universal block platform jacket connector block | (US11352758)<br>2022-06-07 | US11352758<br>US20210222533 |
| (US11549330)<br>Plug-and-play, pre-packaged, and purpose-built valve block | (US11549330)<br>2023-01-10 | US11549330<br>US20210222514 |
| (US11274409)<br>Universal block platform integrated platform block | (US11274409)<br>2022-03-15 | US11274409<br>US20210222386 |

4932-6895-9012, v. 2

| Title | Grant date | Publication numbers |
|---|---|---|
| (US11255062)<br>Universal block platform lower platform block and method of use | (US11255062)<br>2022-02-22 | US11255062<br>US20210214907 |
| (US11808115)<br>Modular subsea equipment, subsea distribution equipment, subsea distribution equipment assembly and repair | (US11808115)<br>2023-11-07 | US11808115<br>US20210207456 |
| (US11180969)<br>Spring actuated adjustable load nut | (US11180969)<br>2021-11-23 | US11180969<br>US20210189824 |
| (US11306557)<br>Subsea tree with rotatable production outlet | (US11306557)<br>2022-04-19 | US11306557<br>US20210180423 |
| (US11713654)<br>Universal block platform | (US11713654)<br>2023-08-01 | US11713654<br>US20210172139 |
| (US11815215)<br>Pig routing insert adapted for installation in a structure, structure and method | (US11815215)<br>2023-11-14 | US11815215<br>US20210164600 |
| (US12181078)<br>Subsea pipeline with multiple access nodes | (US12181078)<br>2024-12-31 | US12181078<br>US20210164588 |
| (US11492864)<br>Connector | (US11492864)<br>2022-11-08 | US11492864<br>US20210164311 |
| (US11339637)<br>Packaging and deployment of a frac pump on a frac pad | (US11339637)<br>2022-05-24 | US11339637<br>US20210156241 |
| (US11041366)<br>Diverter valve | (US11041366)<br>2021-06-22 | US11041366<br>US20210140271 |
| (US11473403)<br>Sliding sleeve valve and systems incorporating such valves | (US11473403)<br>2022-10-18 | US11473403<br>US20210140270 |
| (US11898644)<br>Frac transfer diverter valve | (US11898644)<br>2024-02-13 | US11898644<br>US20210108494 |
| (US12135090)<br>Check valve | (US12135090)<br>2024-11-05 | US12135090<br>US20210095772 |
| (US11421501)<br>Systems, devices and methods for orienting a production outlet of a subsea production tree | (US11421501)<br>2022-08-23 | US11421501<br>US20210095540 |

| Title | Grant date | Publication numbers |
|---|---|---|
| (US11713662)<br>Modular system and manifolds for introducing fluids into a well | (US11713662)<br>2023-08-01 | US11713662<br>US20210079775 |
| (US11619110)<br>System and method for an intelligent quick connect disconnect connector (QCDC) | (US11619110)<br>2023-04-04 | US11619110<br>US20210062617 |
| (US11577183)<br>System for degassing and/or separation of fluid streams and methods of using same | (US11577183)<br>2023-02-14 | US11577183<br>US20210023477 |
| (US11359451)<br>Compact over pull-push stroking tool | (US11359451)<br>2022-06-14 | US11359451<br>US20200399971 |
| (US11795774)<br>Sealing profile protector | (US11795774)<br>2023-10-24 | US11795774<br>US20200378207 |
| (US10982808)<br>Valve control and/or lubrication system | (US10982808)<br>2021-04-20 | US10982808<br>US20200355321 |
| (US11719260)<br>Multi-fluid management with inside out fluid systems | (US11719260)<br>2023-08-08 | US11719260<br>US20200340498 |
| (US11713664)<br>Subsea separator vessel | (US11713664)<br>2023-08-01 | US11713664<br>US20200332640 |
| (US11230908)<br>Equipment for connection of subsea lines | (US11230908)<br>2022-01-25 | US11230908<br>US20200332628 |
| (US11353131)<br>Gate valve bonnet connector | (US11353131)<br>2022-06-07 | US11353131<br>US20200326006 |
| (US11180963)<br>One-piece production/annulus bore stab with integral flow paths | (US11180963)<br>2021-11-23 | US11180963<br>US20200318442 |
| (US11608148)<br>Submersible remote operated vehicle tool change control | (US11608148)<br>2023-03-21 | US11608148<br>US20200317312 |
| (US11318624)<br>Submersible remote operated vehicle tool interchange | (US11318624)<br>2022-05-03 | US11318624<br>US20200317311 |
| (US11007542)<br>Cyclone separator and methods of using same | (US11007542)<br>2021-05-18 | US11007542<br>US20200316618 |
| (US11613978)<br>Erosion-resistant inserts for flow equipment | (US11613978)<br>2023-03-28 | US11613978<br>US20200284132 |

27

| Title | Grant date | Publication numbers |
|---|---|---|
| (US11583786)<br>Immersed plate heater separation system | (US11583786)<br>2023-02-21 | US11583786<br>US20200254363 |
| (US11261686)<br>Tension latch tubing hanger apparatus | (US11261686)<br>2022-03-01 | US11261686<br>US20200240230 |
| (US11242721)<br>Large bore open water lubricator | (US11242721)<br>2022-02-08 | US11242721<br>US20200240229 |
| (US11002386)<br>Low erosion fluid conduit with sharp section geometry | (US11002386)<br>2021-05-11 | US11002386<br>US20200232583 |
| (US11162317)<br>Modular vertical wet Christmas tree, installation method and intervention method thereof | (US11162317)<br>2021-11-02 | US11162317<br>US20200224510 |
| (US11293550)<br>Metal-to-metal sealing system with low component spreading requirements | (US11293550)<br>2022-04-05 | US11293550<br>US20200166136 |
| (US10954744)<br>Plug and abandonment system for forming an upper plug when abandoning an oil and gas well | (US10954744)<br>2021-03-23 | US10954744<br>US20200165896 |
| (US11473415)<br>Separation system | (US11473415)<br>2022-10-18 | US11473415<br>US20200141221 |
| (US11255145)<br>Plug retrieval and installation mechanism | (US11255145)<br>2022-02-22 | US11255145<br>US20200131872 |
| (US11255470)<br>Heavy duty wing nut | (US11255470)<br>2022-02-22 | US11255470<br>US20200124211 |
| (US11680671)<br>Erosion-resistant inserts for flow equipment | (US11680671)<br>2023-06-20 | US11680671<br>US20200063908 |
| (US11142993)<br>Testable back pressure valve and pressure testing system therefor | (US11142993)<br>2021-10-12 | US11142993<br>US20190360292 |
| (US10596489)<br>Immersed plate heater separation system | (US10596489)<br>2020-03-24 | US10596489<br>US20190217222 |
| (US10718177)<br>Composite block frac tree | (US10718177)<br>2020-07-21 | US10718177<br>US20190153803 |
| (US11105175)<br>Adjustable frac flow line | (US11105175)<br>2021-08-31 | US11105175<br>US20190128454 |
| (US11226642)<br>Zipper manifold arrangement for trailer deployment | (US11226642)<br>2022-01-18 | US11226642<br>US20180284816 |

4932-6895-9012, v. 2

| Title | Grant date | Publication numbers |
|---|---|---|
| (US10422483)<br>Well isolation unit | (US10422483)<br>2019-09-24 | US10422483<br>US20180283618 |
| (US10871059)<br>Modular system and manifolds for introducing fluids into a well | (US10871059)<br>2020-12-22 | US10871059<br>US20180223640 |
| (US12228022)<br>Carbon dioxide control system for well control and production | (US12228022)<br>2025-02-18 | US12228022 |
| (US11807349)<br>Submersible remote operated vehicle vision assistance and control | (US11807349)<br>2023-11-07 | US11807349 |
| (US11668412)<br>Yoke over pipeline end termination assembly and method of use | (US11668412)<br>2023-06-06 | US11668412 |
| (US11499389)<br>Modular control systems with umbilical deployment | (US11499389)<br>2022-11-15 | US11499389 |
| (US11274664)<br>Method and systems for positive displacement of an actuation device | (US11274664)<br>2022-03-15 | US11274664 |
| (US10689921)<br>One-piece production/annulus bore stab with integral flow paths | (US10689921)<br>2020-06-23 | US10689921 |
| (SA522440729)<br>Differential pressure based automated sand detection and handling system for oil and gas well operations | (SA522440729)<br>2024-06-06 | SA522440729 |
| (SA521430593)<br>Modular valve tree | (SA521430593)<br>2024-03-26 | SA521430593 |
| (JP7470799)<br>Power Storage and Brine Washing System | (JP7470799)<br>2024-04-18 | JP7470799<br>JP2022549028 |
| (EP4179181)<br>Well test module | (EP4179181)<br>2024-06-26 | EP4179181<br>EP4179181 |
| (EP4151826)<br>One-piece production/annulus bore stab with integral flow paths | (EP4151826)<br>2024-07-17 | EP4151826<br>EP4151826 |
| (EP4092245)<br>Coiled piston assembly | (EP4092245)<br>2024-05-22 | EP4092245<br>EP4092245<br>EP4092245 |
| (EP4055249)<br>Collet-type wellhead connector system | (EP4055249)<br>2024-09-18 | EP4055249<br>EP4055249 |

| Title | Grant date | Publication numbers |
|---|---|---|
| (EP4055248)<br>Wellhead connecting assembly | (EP4055248)<br>2024-10-16 | EP4055248<br>EP4055248 |
| (EP4031745)<br>Flow bore guide vane insert | (EP4031745)<br>2024-03-06 | EP4031745<br>EP4031745 |
| (EP3947902)<br>Submersible remote operated vehicle tool change control | (EP3947902)<br>2024-10-09 | EP3947902<br>EP3947902 |
| (EP3946846)<br>Tool interchange for a submersible remote operated vehicle and corresponding method | (EP3946846)<br>2023-11-01 | EP3946846<br>EP3946846 |
| (EP3927931)<br>Electrical feedthrough system and methods of use thereof | (EP3927931)<br>2023-02-08 | EP3927931<br>EP3927931 |
| (EP3927930)<br>Electrical feedthrough system and methods of use thereof | (EP3927930)<br>2025-02-26 | EP3927930<br>EP3927930 |
| (EP3921507)<br>One-piece production/annulus bore stab with integral flow paths | (EP3921507)<br>2022-11-09 | EP3921507<br>EP3921507 |
| (EP3906105)<br>Electro-coalescer cell with turbulence-inducing shape for maximized performance | (EP3906105)<br>2022-11-30 | EP3906105<br>EP3906105 |
| (EP3894657)<br>Rotating indexing coupling (RIC) assembly for installation and orientation of a subsea production tree | (EP3894657)<br>2023-11-01 | EP3894657<br>EP3894657 |
| (EP3818248)<br>Ultrasonic through barrier communication system in riser communication | (EP3818248)<br>2024-03-27 | EP3818248<br>EP3818248<br>EP3818248 |
| (EP3784876)<br>Systems, devices and methods for orienting a production outlet of a subsea production tree | (EP3784876)<br>2023-05-31 | EP3784876<br>EP3784876 |
| (EP3759311)<br>Subsea pipeline with multiple access nodes | (EP3759311)<br>2024-10-30 | EP3759311<br>EP3759311 |
| (EP3732349)<br>Compact over pull-push stroking tool | (EP3732349)<br>2021-10-20 | EP3732349<br>EP3732349 |

4932-6895-9012, v. 2

| Title | Grant date | Publication numbers |
|---|---|---|
| (EP3707342)<br>Spring actuated adjustable load nut | (EP3707342)<br>2022-06-01 | EP3707342<br>EP3707342<br>EP3707342 |
| (EP3701153)<br>Multi-fluid management with inside out fluid systems | (EP3701153)<br>2023-03-08 | EP3701153<br>EP3701153 |
| (EP3701117)<br>Subsea tree with rotatable production outlet | (EP3701117)<br>2023-12-27 | EP3701117<br>EP3701117 |
| (EP3665360)<br>Plug and abandonment system for forming an upper plug when abandoning an oil and gas well | (EP3665360)<br>2022-10-19 | EP3665360<br>EP3665360 |
| (EP3662134)<br>Large bore open water lubricator | (EP3662134)<br>2021-10-27 | EP3662134<br>EP3662134 |
| (EP3641905)<br>Subsea seawater filtration apparatus | (EP3641905)<br>2024-05-22 | EP3641905<br>EP3641905<br>EP3641905 |
| (EP3635213)<br>Coiled piston assembly | (EP3635213)<br>2022-09-07 | EP3635213<br>EP3635213<br>EP3635213 |
| (EP3596303)<br>Plug retrieval and installation mechanism | (EP3596303)<br>2021-04-21 | EP3596303<br>EP3596303 |
| (CN114303002)<br>Method for controlling tool replacement of submersible remote-control vehicle and submersible remote control vehicle system | (CN114303002B)<br>2024-06-14 | CN114303002<br>CN114303002 |
| (CN114040835)<br>Tool exchange part, corresponding system and method of underwater remote-control submersible | (CN114040835B)<br>2023-05-09 | CN114040835<br>CN114040835 |
| (CN113950565)<br>System and method for automatic and intelligent fracturing pads | (CN113950565B)<br>2023-10-13 | CN113950565<br>CN113950565 |
| (CN112689596)<br>Fluid product delivery system | (CN112689596B)<br>2023-08-08 | CN112689596<br>CN112689596 |
| (CA3136728)<br>Seat pocket insert | (CA3136728)<br>2024-04-30 | CA3136728<br>CA3136728 |
| (CA3136723)<br>Modular valve tree | (CA3136723)<br>2024-04-30 | CA3136723<br>CA3136723 |

31

| Title | Grant date | Publication numbers |
|---|---|---|
| (CA3119138)<br>Erosion-resistant inserts for flow equipment | (CA3119138)<br>2023-06-13 | CA3119138<br>CA3119138 |
| (CA3117590)<br>Flexible pipe for hydraulic fracturing applications | (CA3117590)<br>2023-08-29 | CA3117590<br>CA3117590 |
| (CA3108654)<br>Check valve pivot pin retainer seal | (CA3108654)<br>2023-08-01 | CA3108654<br>CA3108654 |
| (CA3098050)<br>Diverter valve | (CA3098050)<br>2024-05-21 | CA3098050<br>CA3098050 |
| (CA3098044)<br>Sliding sleeve valve and systems incorporating such valves | (CA3098044)<br>2024-01-02 | CA3098044<br>CA3098044 |
| (CA3096862)<br>Well fracture systems and methods | (CA3096862)<br>2023-03-07 | CA3096862<br>CA3096862 |
| (CA3091370)<br>System and method for an intelligent quick connect disconnect connector (QCDC) | (CA3091370)<br>2023-03-21 | CA3091370<br>CA3091370 |
| (CA3079730)<br>Valve control and/or lubrication system | (CA3079730)<br>2024-03-19 | CA3079730<br>CA3079730 |
| (CA3070368)<br>Tension latch tubing hanger apparatus and methods of use thereof | (CA3070368)<br>2022-03-08 | CA3070368<br>CA3070368 |
| (CA3051005)<br>Testable back pressure valve and pressure testing system therefor | (CA3051005)<br>2021-07-27 | CA3051005<br>CA3051005 |
| (CA2999723)<br>Well isolation unit | (CA2999723)<br>2020-11-10 | CA2999723<br>CA2999723 |
| (CA2999679)<br>Fracturing manifold alignment systems | (CA2999679)<br>2021-07-06 | CA2999679<br>CA2999679 |
| (BR112022008679)<br>Well head connector system type tweezers | (BR112022008679)<br>2024-12-10 | BR112022008679<br>BR112022008679<br>BR112022008679 |
| (BR112022005162)<br>Vane insert flow hole guide | (BR112022005162)<br>2025-01-07 | BR112022005162<br>BR112022005162<br>BR112022005162 |
| (BR112022001935)<br>System and methods of use for a blind plug | (BR112022001935)<br>2024-10-08 | BR112022001935<br>BR112022001935<br>BR112022001935 |

4932-6895-9012, v. 2

| Title | Grant date | Publication numbers |
|---|---|---|
| (BR112021016504)<br>Power supply pass-through system and methods of using it | (BR112021016504)<br>2024-12-03 | BR112021016504<br>BR112021016504<br>BR112021016504 |
| (BR112021011251)<br>Apparatus comprising a snap body, at least one inlet/outlet, and a coupler body positioned around the snap body and method | (BR112021011251)<br>2023-08-15 | BR112021011251<br>BR112021011251<br>BR112021011251 |
| (BR112021000079)<br>Ultrasonic barrier communication system for riser communication | (BR112021000079)<br>2024-01-02 | BR112021000079<br>BR112021000079<br>BR112021000079 |
| (BR112020021898)<br>Systems, devices, and methods for guiding a production output of a subsea production tree | (BR112020021898)<br>2023-07-25 | BR112020021898<br>BR112020021898<br>BR112020021898 |
| (BR112020017794)<br>System and method of implanting underwater piping with multiple access nodes | (BR112020017794)<br>2023-12-12 | BR112020017794<br>BR112020017794<br>BR112020017794 |
| (BR112020013350)<br>Extendable wellbore tool, method, and system | (BR112020013350)<br>2023-03-21 | BR112020013350<br>BR112020013350<br>BR112020013350 |
| (BR112020008383)<br>Manifold hanger assembly and method of installing a manifold hanger to a wellhead | (BR112020008383)<br>2023-06-13 | BR112020008383<br>BR112020008383<br>BR112020008383 |
| (BR112020008359)<br>Fluid system, method to manage a multiphase fluid and system | (BR112020008359)<br>2023-11-28 | BR112020008359<br>BR112020008359<br>BR112020008359 |
| (BR112020007984)<br>Christmas tree, assembly and method for installing a Christmas tree in a wellhead | (BR112020007984)<br>2023-09-12 | BR112020007984<br>BR112020007984<br>BR112020007984 |
| (BR112020002845)<br>Method and system for forming an upper plug in a wellbore | (BR112020002845)<br>2023-04-18 | BR112020002845<br>BR112020002845<br>BR112020002845 |
| (BR112020002220)<br>System, method for performing a well drilling operation and open water lubricator | (BR112020002220)<br>2023-05-09 | BR112020002220<br>BR112020002220<br>BR112020002220 |
| (BR112019026776)<br>Underwater sea water filtering apparatus | (BR112019026776)<br>2024-03-26 | BR112019026776<br>BR112019026776<br>BR112019026776 |

4932-6895-9012, v. 2

| Title | Grant date | Publication numbers |
|---|---|---|
| (BR112019024110)<br>Tubing hanger assembly, method of installing a tubing hanger in a wellhead, piston assembly, and method of attaching an inner member to an outer member | (BR112019024110)<br>2023-05-09 | BR112019024110<br>BR112019024110<br>BR112019024110 |
| (BR112019019125)<br>Rigid current driver, system, and method | (BR112019019125)<br>2023-03-07 | BR112019019125<br>BR112019019125<br>BR112019019125 |
| (AU2024205196)<br>Submersible remote operated vehicle tool change control | (AU2024205196)<br>2024-08-22 | AU2024205196<br>AU2024205196 |
| (AU2023282195)<br>Submersible remote operated vehicle tool interchange | (AU2023282195)<br>2024-03-07 | AU2023282195<br>AU2023282195 |
| (AU2022208251)<br>Method and systems for positive displacement of an actuation device | (AU2022208251)<br>2024-08-08 | AU2022208251<br>AU2022208251 |
| (AU2021306311)<br>Well test module | (AU2021306311)<br>2024-06-13 | AU2021306311<br>AU2021306311 |
| (AU2021296911)<br>Lead impression tool | (AU2021296911)<br>2023-11-02 | AU2021296911<br>AU2021296911 |
| (AU2020277322)<br>System and method for an automated and intelligent frac pad | (AU2020277322)<br>2023-04-27 | AU2020277322<br>AU2020277322 |
| (AU2020253607)<br>Tool interchange for a submersible remote operated vehicle, corresponding system and method | (AU2020253607)<br>2023-09-14 | AU2020253607<br>AU2020253607 |
| (AU2020253548)<br>Submersible remote operated vehicle tool change control | (AU2020253548)<br>2024-05-02 | AU2020253548<br>AU2020253548 |
| (AU2018354135)<br>Subsea tree with rotatable production outlet | (AU2018354135)<br>2021-07-22 | AU2018354135<br>AU2018354135 |
| (AU2017417925)<br>Coiled piston assembly | (AU2017417925)<br>2023-02-16 | AU2017417925<br>AU2017417925 |
| (AU2017412390)<br>Sealing profile protector | (AU2017412390)<br>2024-02-08 | AU2017412390<br>AU2017412390 |
| (AU2017404517)<br>Plug retrieval and installation mechanism | (AU2017404517)<br>2020-09-10 | AU2017404517<br>AU2017404517 |

34

# **<u>Tab A</u>**

Janet Robinett - November 15, 2023

```
1              IN THE UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS
2

3         _____
                                 )
4    CROSBY LEGACY COMPANY        )
     LLC d/b/a PHILIP             )
5    CROSBY ASSOCIATES,           )
                                  )
6            Plaintiff,           )  Case No.
                                  )  1:18-cv-10814-MLW
7         vs.                     )
                                  )
8    TECHNIPFMC PLC,              )
                                  )
9            Defendant.           )
          _____)
10

11

12                         VOLUME I
13

14

15         The virtual video-recorded deposition of

16   JANET ROBINETT, called by the Plaintiff for

17   examination, pursuant to Notice, and pursuant to the

18   Rules of Civil Procedure for the United States

19   District Courts, taken stenographically by Sandra L.

20   Rocca, CSR, RMR, RDR, CRR, via Zoom, on the 15th of

21   November, 2023, at the hour of 8:35 a.m.

22

23

24

25   Certification Nos. 084-3435, 1245
```

Janet Robinett - November 15, 2023

Page 2

```
 1      APPEARANCES:  (All parties appeared remotely)

 2

              MINTZ LEVIN COHN FERRIS GLOVSKY
 3            AND POPEO PC
              By:  MR. PETER A. BIAGETTI
 4                 MR. AARON MEGAR
              One Financial Center
 5            Boston, MA  02111
              617.348.4472
 6            pabiagetti@mintz.com
              amegar@mintz.com
 7
                   appeared on behalf of the
 8                 Plaintiff;

 9

10            CONN KAVANAUGH ROSENTHAL PEISCH & FORD, LLP
              By:  MR. KURT B. FLIEGAUF
11                 MR. ANDREW DENNINGTON
              One Federal Street, 15th Floor
12            Boston, MA  02110
              617.348.8221
13            kfliegauf@connkavanaugh.com
              adennington@connkavanaugh.com
14
                   appeared on behalf of the
15                 Defendant.

16

17

18

19      Also Present:

20            Mr. Kevin Weiss

21            Mr. Steve Ryan, TechnipFMC corporate counsel

22

23                      * * * * *

24

25
```

Janet Robinett - November 15, 2023

```
1                        I N D E X

2     WITNESS                              PAGE

3     JANET ROBINETT

4
      EXAMINED BY
5
        Mr. Biagetti                       7
6

7                       * * * * *

8                     E X H I B I T S

9     NUMBER                          MARKED FOR ID

10    Robinett

11    Exhibit 1   J. Robinett LinkedIn profile    8

12    Exhibit 2   30(b)(6) Notice                 32

13    Exhibit 3   Defendant's Answer and Defenses 36

14    Exhibit 4   Defendant's Answers to
                  Interrogatories                 38
15
      Exhibit 5   PCA_0037534 to 37543            56
16
      Exhibit 6   TechnipFMC-0002937 to 2939      75
17
      Exhibit 7   TechnipFMC-00011521 to 11528    83
18
      Exhibit 8   PCA_0021465 (native)
19                process flow diagram            112

20    Exhibit 9   SDG 003809 to 3810              125

21    Exhibit 10  SDG 002689 to 2690              129

22    Exhibit 11  SDG 004803 to 4810              131

23    Exhibit 12  SDG 008540 to 8544              132

24

25
```

GregoryEdwards, LLC |  Worldwide Court Reporting
GregoryEdwards.com | 844-483-2643

Janet Robinett - November 15, 2023

Page 30

| | | |
|---|---|---|
| 09:06:11 | 1 | wrote this LinkedIn profile, right? |
| 09:06:13 | 2 | A  That's correct. |
| 09:06:14 | 3 | Q  And it's not just one job that overlaps at |
| 09:06:20 | 4 | Technip, it's two, right, the director of quality |
| 09:06:23 | 5 | health safety environment, and the quality |
| 09:06:26 | 6 | leadership program senior manager?  Do you see that? |
| 09:06:31 | 7 | A  Yeah, that's why I say that August 2020 is |
| 09:06:34 | 8 | inaccurate.  I've not noticed this before and I have |
| 09:06:38 | 9 | to say I don't pay much attention to LinkedIn |
| 09:06:41 | 10 | obviously. |
| 09:06:42 | 11 | Q  Well, what is your testimony now then about |
| 09:06:48 | 12 | when you ceased serving as the quality director at |
| 09:06:54 | 13 | FMC if it wasn't August 2020? |
| 09:06:57 | 14 | MR. FLIEGAUF:  Objection.  Hold on. |
| 09:06:59 | 15 | Objection.  Let me put an objection on the record |
| 09:07:02 | 16 | and you can answer.  You can answer. |
| 09:07:05 | 17 | BY MR. BIAGETTI: |
| 09:07:05 | 18 | Q  You can answer.  You may answer. |
| 09:07:06 | 19 | A  Okay.  FMC Technologies did not exist after |
| 09:07:11 | 20 | January 2017, so it's an error in my LinkedIn |
| 09:07:17 | 21 | program -- profile. |
| 09:07:20 | 22 | Q  So you were -- you were not being paid by |
| 09:07:27 | 23 | FMC Technologies in say June or July 2020? |
| 09:07:30 | 24 | A  No. |
| 09:07:31 | 25 | Q  Okay.  That's just an error.  You're saying |

Janet Robinett - November 15, 2023

| | | |
|---|---|---|
| 09:07:38 | 1 | that's just a mistake? |
| 09:07:39 | 2 | A  That is correct. |
| 09:07:40 | 3 | Q  Do you remember when you wrote this profile? |
| 09:07:44 | 4 | A  Have no idea when I updated it last. |
| 09:07:48 | 5 | Q  Let's enter the LinkedIn profile as |
| 09:07:55 | 6 | Exhibit 1, please.  And let's move to the next |
| 09:08:07 | 7 | exhibit.  Thank you, Aaron. |
| 09:08:09 | 8 | Let's move to the next exhibit in our |
| 09:08:12 | 9 | notebook which should be Plaintiff's Notice of |
| 09:08:15 | 10 | Rule 30(b)(6) Deposition.  Do you have that before |
| 09:08:20 | 11 | you, Ms. Robinett? |
| 09:08:22 | 12 | A  Yes. |
| 09:08:24 | 13 | Q  Thank you.  Now, I'll represent to you that |
| 09:08:28 | 14 | this is a document served by my firm to |
| 09:08:32 | 15 | Mr. Fliegauf's firm listing a bunch of topics on |
| 09:08:37 | 16 | which someone designated by TechnipFMC was going to |
| 09:08:41 | 17 | testify at deposition.  Have you ever seen it |
| 09:08:46 | 18 | before? |
| 09:08:46 | 19 | A  Yes. |
| 09:08:46 | 20 | Q  And you understand that you are the designee |
| 09:08:49 | 21 | for TechnipFMC? |
| 09:08:51 | 22 | A  Yes. |
| 09:08:52 | 23 | Q  All right.  Let's -- |
| 09:08:54 | 24 | MR. FLIEGAUF:  To be clear, Peter, there |
| 09:08:56 | 25 | were two topics that Mr. Scott was designated on.  I |

Janet Robinett - November 15, 2023

Page 54

| | | |
|---|---|---|
| 09:42:07 | 1 | Q  Do you know what -- do you know who was in |
| 09:42:09 | 2 | charge of that? |
| 09:42:10 | 3 | A  I do not. |
| 09:42:11 | 4 | Q  Do you know whether or not they used PCA |
| 09:42:16 | 5 | principles as part of the PAY$ program? |
| 09:42:18 | 6 | A  Not to my knowledge. |
| 09:42:19 | 7 | Q  Thank you.  Let's go to the next document in |
| 09:42:27 | 8 | your notebook. |
| 09:42:33 | 9 | A  Can we take a short break? |
| 09:42:36 | 10 | Q  Sure.  What do you need, five minutes? |
| 09:42:41 | 11 | MR. FLIEGAUF:  That would be great.  Thank |
| 09:42:42 | 12 | you. |
| 09:42:43 | 13 | (Short recess.) |
| 09:52:53 | 14 | BY MR. BIAGETTI: |
| 09:53:09 | 15 | Q  What do we have for the time, 10:51. |
| 09:53:18 | 16 | Welcome back, Ms. Robinett.  When you were -- |
| 09:53:22 | 17 | MR. FLIEGAUF:  Go ahead. |
| 09:53:22 | 18 | THE WITNESS:  I'm sorry.  I do need to make |
| 09:53:25 | 19 | a clarification.  I misspoke earlier.  I think I |
| 09:53:28 | 20 | commented that FMC Technologies does not exist |
| 09:53:33 | 21 | anymore and technically, the legal entity does.  So |
| 09:53:41 | 22 | just wanted to make that clarification. |
| 09:53:42 | 23 | BY MR. BIAGETTI: |
| 09:53:43 | 24 | Q  Okay.  Thank you.  Does that change your |
| 09:53:46 | 25 | answer about your LinkedIn profile being in error? |

Janet Robinett - November 15, 2023

Page 55

| | | |
|---|---|---|
| 09:53:50 | 1 | A No.  It's still inaccurately represented on |
| 09:53:55 | 2 | my profile. |
| 09:53:56 | 3 | Q Okay.  Just before we broke, we were talking |
| 09:54:01 | 4 | about the PAY$ program and sharing quality |
| 09:54:08 | 5 | principles with TechnipFMC suppliers, right? |
| 09:54:11 | 6 | A Yes. |
| 09:54:12 | 7 | Q Now, does TechnipFMC make any effort at all |
| 09:54:18 | 8 | to track savings being achieved by suppliers who are |
| 09:54:24 | 9 | adhering to the IQ principles? |
| 09:54:27 | 10 | A Not to my knowledge. |
| 09:54:29 | 11 | Q Would someone from supplier quality know the |
| 09:54:32 | 12 | answer to that? |
| 09:54:35 | 13 | A Yes. |
| 09:54:36 | 14 | Q Who would that be, do you know? |
| 09:54:38 | 15 | A Vaughn Janak. |
| 09:54:44 | 16 | Q Can you spell the last name? |
| 09:54:46 | 17 | A Y -- I'm sorry, J-a-n-a-k. |
| 09:54:50 | 18 | Q And did you ever see any attempt to track |
| 09:55:00 | 19 | PONC or any other savings measure being achieved by |
| 09:55:05 | 20 | suppliers or subcontractors who were adhering to the |
| 09:55:08 | 21 | IQ principles? |
| 09:55:11 | 22 | A No. |
| 09:55:12 | 23 | Q Thank you.  Let's go, please, to the next |
| 09:55:19 | 24 | tab in your book.  It's the one we left off at I |
| 09:55:24 | 25 | think just before the break.  It begins with a |